hBAGNERIS, Judge.

STATEMENT OF THE CASE

On June 11, 1998 the State filed an indictment charging the defendant with one count of aggravated rape of a victim under the age of twelve, a capital offense. The indictment was assigned docket number 398-849 and allotted to Section “E” of Criminal District Court. The defendant was arraigned and entered a not guilty plea on July 1, 1998. A variety of pretrial motions were filed and heard, including a motion to quash the indictment, which was denied on November 9, 1998. Furthermore, on March 23, 1999, the trial court found the defendant incompetent to proceed and ordered him transported to Feli-ciana Forensic Facility.
Another lunacy hearing was held on January 27, 2000, at which time the trial court set trial for April 17, 2000 and a lunacy hearing for April 11, 2000.[1] Additional pretrial motions were filed in March 2000 and heard. On April 11, 2000, the State filed an oral motion for a continuance of the trial, which was granted, and trial was reset to May 16, 2000.
On April 17, 2000, the defendant filed a response to a State motion to compel the defense to turn over a copy of a DNA test report. On April 19, 2000, the State filed a motion for a subpoena for the test results. The trial court denied the State’s motions; the State gave notice of intent to seek writs, and on May 8, 2000 the State filed its application, 2000-K-1026.
On May 12, 2000, this Court denied the State’s writ in a one paragraph per curiam. Although the trial court had denied the State’s request for a stay order | ^pending its writ application, on May 16, 2000, the trial court reset the trial to May 18, 2000 as another trial was in progress.
The trial court denied a request by the State for a further continuance of the trial. The State’s emergency writ application, 2000-K-1133, was denied by this Court on May 17, 2000; writs were denied by the Supreme Court. State v. Stephens, 2000-1385 (La.5/17/00), 762 So.2d 623.
On May 18, 2000, the State entered a nolle prosequi in case number 398-849 because the trial court refused to continue the trial. Also, according to the docket master entry of May 18, 2000, the State requested that it be allowed to draw the defendant’s blood for testing; the trial court had granted the State’s motion for this on April 26, 2000 but it had apparently never occurred. The trial court denied the State’s motion to obtain blood from the defendant.
On May 24, 2000, the State returned to Magistrate court under the original magistrate number and filed new motions. In one motion, the State moved to obtain a blood sample from the defendant; the trial court deferred a ruling on this until a probable cause hearing could be held on May 31, 2000.[2] In another motion, the *467 State moved to require the defense to return to the State a piece of cushion, or the swab, from which the defendant had DNA testing done. The Magistrate court denied this motion, and the State objected. The court set a return date of June 9, 2000 after the State filed a written notice of intent to seek writs.

\ STATEMENT OF THE FACTS

The underlying facts of this case are not clear from the record before this Court. The only facts elicited, which are pertinent, are that the victim was age six at the time of the alleged rape and that she has stated that the defendant ejaculated on a cushion after having sex with her. According to the defense exhibit B attached to his response, on October 15, 1998, the defendant filed a motion allowing access to and release and removal of physical evidence for the purpose of DNA testing. The motion was granted, and the defense was given a small piece of the cushion for purposes of DNA testing. The rest of the cushion is in the custody of the property room. No testing by the State has ever been done.

WRIT APPLICATION # 2000-K-1306

The Magistrate court denied the State’s motion to obtain the sample of the cushion from the defense because the original trial court and the Fourth Circuit had previously ruled that the State was not entitled to the DNA test results conducted by the defense unless the defense intended to use them at trial. The court apparently concluded that the State had no more right to the physical sample than to the results of the test.
The State in its writ application avers: The State is now in the investigatory stage and seeks the return of the swatch taken from the cushion in evidence by defense counsel. This swatch is an essential item of evidence and is necessary for the effective investigation of this case since it was apparently cut out of the rest of the cushion sample. The State needs the entirety of its evidence in order to adequately investigate any case, let alone one in which sensitive and precise DNA testing will most certainly be required.
|4The State’s writ application is frivolous. The State never moved for a return of the physical sample given to the defense for testing pursuant to a valid motion and order while the defendant’s actual case was still pending. The State did move for the test results, a request that was denied. This Court affirmed, stating that the State was not entitled to test results not intended to be used at the trial. This Court further noted that, “[bjecause there remains testable evidence in this case,” State v. Cosey, 95-0039 (La.3/30/95), 652 So.2d 993, is distinguishable. State v. Stephens, 2000-1026, unpub. (La.App. 4 Cir. 5/12/00).
The State, in the almost two years that the defendant was under indictment, never managed to test the evidence which remained in its possession. There is no indication that the defense counsel has failed to properly preserve the evidence, which it has. Further, there is nothing in the record before this Court to indicate that defense counsel has in any way obstructed the State’s access to evidence.
The evidence at issue was in the State’s possession for months before the defense ever moved to obtain a sample for testing. The State was in a position to conduct its “investigation” but apparently failed to do so. To now accuse the defense counsel of impropriety is unwarranted.
The Magistrate court denied the State’s request for the small swatch in the defense counsel’s possession because it believed that the issue has basically been litigated already. Thus, we find no error in the trial court’s ruling. Until such time as the State shows that the remaining cushion sample does not contain testable evidence, and thus the State must have access to the defendant’s test results and/or the portion from which the defendant’s test sample was drawn, the State has not made a *468 sufficient showing that it should be able to remove the evidence from the defense’s possession.

CONCLUSION

Accordingly, we find that the trial court did not err when it denied the State’s motion to require the defense to turn over the swatch of cushion, which was used by the defense for testing.

WRIT APPLICATION # 2000-K-1348

On May 24, 2000, oral arguments were held in magistrate court on the State’s motion to obtain the defendant’s blood. On June 14, 2000, the court held a probable cause hearing, finding probable cause. The court granted the State’s motion and the defense sought writs to this Court, writ application, No. 2000-K-1348.
On June 16, 2000, the Defendant filed a motion to consolidate writ 2000-K-1348 with writ 2000-K-1306 and he argues that there is no longer a prosecutable case, and thus the State should not be permitted to conduct any investigation, including drawing the defendant’s blood for DNA testing, which is the issue before this Court in writ 2000-K-1348. The Defense’s argument is based on the fact that the State nolle prosequied the indictment to give itself a continuance which it needed to obtain DNA testing and that the State’s attempt to obtain a continuance for this purpose was denied by the trial and appellate courts.
Presumably by calling the present posture of the case “investigatory” and not filing a new indictment, the State is attempting to buy additional time to conduct testing before the defense can file a motion to quash the prosecution on speedy trial grounds and/or the State is again forced to trial without DNA evidence. The defendant cannot file a motion to quash because prosecution has not yet been reinstituted, and thus there is no prosecution to quash. Furthermore, the statutory |fitime limits for trial have not expired yet.[3] Similarly, it cannot be said absolutely on the record now before this Court that the defendant’s constitutional right to a speedy trial has been violated.

CONCLUSION

Accordingly, we grant writ application 2000-K-1348, and vacate the trial court’s ruling finding probable cause to obtain the defendant’s blood for testing.

WRIT APPLICATION #2000-K-1306 DENIED.

WRIT APPLICATION #2000-K-1348 GRANTED.

. According to the defense counsel, the trial court actually found the defendant competent in January, but set an additional lunacy hearing a week before trial to be sure the medication was still effective.

. The Magistrate court subsequently granted the State’s motion; the defense filed an emergency writ, 2000-K-1348, from that order. This Court has issued a stay. The two writs were consolidated.

. The defendant was incompetent to proceed to trial during some of the period from the filing of the original indictment on June 11, 1998 to the date the State entered the nolle prosequi on May 18, 2000. La. C.Cr.P. art. 575(1) provides that the time limits are interrupted when a defendant lacks the mental capacity to proceed to trial and is committed. In any event, La. C.Cr.P. art. 578 gives the State three years after institution of prosecution to commence trial in a capital case. The indictment was filed on June 11, 1998, and therefore the State, without regard to any suspensions or interruptions, has at least until June 11, 2001 in which to commence trial.