782 So.2d 562 (2001)
STATE of Louisiana
v.
Paul STEPHENS.
No. 2000-KK-2472.
Supreme Court of Louisiana.
March 16, 2001.
Rehearing Denied April 3, 2001.
*563 PER CURIAM.
Following its dismissal in May, 2000, of a grand jury indictment charging respondent with capital aggravated rape, an action apparently prompted by the district court's refusal to continue the case on the morning of trial, the state sought return from the defense of a swatch of material cut from a stain allegedly left on a cushion at the time of the offense. The state had provided the sample to the defense for independent testing in the course of pre-trial discovery. Although no grand jury indictment was pending against relator, the state also sought to draw a sample of his blood for its own testing. The magistrate judge for Orleans Parish denied the state's motion to recover its evidence but granted its motion to draw respondent's blood on grounds that probable cause existed to link him to the alleged rape of the victim.
In response to cross applications filed by the state and defense, the Fourth Circuit affirmed the magistrate's denial of the state's motion to recover the cushion swatch but reversed the lower court's order directing respondent to provide a blood sample. With respect to the swatch, the court of appeal ruled that "[u]ntil such time as the State shows that the remaining cushion sample does not contain testable *564 evidence, and thus the State must have access to the defendant's test results and/or the portions from which the defendant's test sample was drawn, the State has not made a sufficient showing that it should be able to remove the evidence from the defense's possession." State v. Stephens, 00-1306, p. 4 (La.App. 4th Cir.7/19/00), 775 So.2d 465, 467. As to the blood sample, the Fourth Circuit did not entirely agree with respondent that the state's manipulation of its charging powers to avoid trial on May 18, 2000, despite the court's denial of its motion for a continuance, had violated his speedy trial rights and thereby foreclosed further prosecution. However, the court of appeal did agree, as the basis for sanctioning the state by precluding it from drawing respondent's blood, that "by calling the present posture of the case `investigatory' and not filing a new indictment, the state is attempting to buy additional time to conduct testing before the defense can file a motion to quash the prosecution on speedy trial grounds and/or the State is again forced to trial without DNA evidence." Stephens, 00-1306 at 5, 775 So.2d at 468.
The court of appeal erred in both rulings. With regard to the state's motion for return of the cushion swatch, La. C.Cr.P. art. 718, like its federal counterpart, Fed.R.Crim.P. 16(a)(1)(C), permits independent scientific testing by the defense of tangible objects which the prosecution intends to use at trial. This statutory rule of discovery advances important defense interests in securing the opportunity to have an expert of its choosing "examine a piece of critical evidence whose nature is subject to varying expert opinion." Barnard v. Henderson, 514 F.2d 744, 746 (5th Cir.1975); see also, United States v. Nabors, 707 F.2d 1294, 1296 (11th Cir.1983) ("Clearly a defendant in a drug prosecution has a due process right to have an expert of his choosing perform an independent analysis on the seized substance."); ABA Standards Relating to Discovery and Procedure before Trial, § 2.1, Cmt. at 68 (1970)("It seems quite clear that permitting defense counsel to inspect [tangible items] before trial will be the only way to satisfy many of the objectives to be achieved in the pretrial period, such as facilitating pleas, insuring adequacy of preparation, including examination by experts, and saving considerable time at any trial that follows.").
Given its discovery obligations, the prosecution has "a concomitant responsibility to try in good faith to preserve important material and to locate it once the defendant moves for discovery." Nabors, 707 F.2d at 1296; cf. Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (Due Process Clause prohibits only the bad faith destruction of evidence). However, when the state has satisfied its discovery responsibilities under La.C.Cr.P. art. 718 by providing the defense with access to its tangible evidence for purposes of inspection and testing, the defense has an analogous duty to try in good faith to preserve as much of the evidence as remains after testing and to return the evidence to the state. See United States v. Noel, 708 F.Supp. 177, 178 (W.D.Tenn.1989) (government must provide defense counsel with the opportunity for independent testing of alleged cocaine; "[A]ny residue remaining after completion of the test shall be returned to and recovered by the government.").
Our order in State v. Cosey, 95-0039 (La.3/30/95), 652 So.2d 993, does not purport to establish a rule that the state must make a threshold showing of necessity before it may recover from the defense evidence gathered by the police at the scene of a crime and properly subject to its custody and control before disclosure in *565 the course of pre-trial discovery. In Cosey, we concluded that "fundamental fairness and the extraordinary circumstances presented by this case" required that the defense disclose the results of a DNA test it did not plan on introducing at trial because "the remaining testable quantities of physical evidence of a crime have been destroyed, consumed, or otherwise exhausted by the defendant's own actions in testing the physical evidence." Id., 95-0039 at 1, 652 So.2d at 994. In the present case, however, the state does not seek the defense test results, a matter previously litigated and resolved against disclosure. State v. Stephens, 00-1026 (La.App. 4th Cir.5/12/00), ___ So.2d ___. Instead, the state seeks return of the physical evidence itself which apparently was not consumed in the testing and which remains in the files of defense counsel. A rule that would require the state to demonstrate special circumstances as a prerequisite for the return of its physical evidence would subvert the purposes of discovery under La. C.Cr.P. art. 718 by prompting the state to resist any request for inspection of its tangible evidence for fear of losing it. The legislature clearly did not intend its provisions for pre-trial discovery of tangible evidentiary items in criminal cases to serve as a vehicle for transferring exclusive physical custody over evidence gathered at a crime scene from the state to the defense in advance of trial. Without regard to whether the remaining portions of the stain on the cushion may provide testable samples, the swatch cut from that cushion constitutes evidence secured from the crime scene by the police, and it remains properly subject to the custody and control of the District Attorney's Office for Orleans Parish notwithstanding that office's discharge of the state's discovery obligations under La.C.Cr.P. art. 718. With independent testing completed, respondent must return the swatch to the state as the proper custodian of the evidence.
With respect to the probable cause issue, Sergeant Phyllis Funches testified at the hearing conducted by the magistrate court on June 14, 2000, that when interviewed approximately one week after the alleged rape took place, the six-year-old victim identified respondent by name, described him as one of her babysitters, and, with the aid of anatomically correct dolls, related that respondent had subjected her to vaginal and anal intercourse. The victim also stated that respondent had ejaculated on a cushion lying next to them on the bed where the crimes allegedly occurred. Sergeant Funches subsequently recovered the cushion and observed a stain consistent with the victim's account.
Given this testimony, the magistrate judge reasonably found probable cause for the state to draw respondent's blood as a necessary preliminary step in an effort to identify the DNA presumably deposited in the stain on the cushion. The drawing of blood represents a routine medical procedure when conducted according to accepted medical practices, and one which "for most people involves virtually no risk, trauma, or pain." Schmerber v. California, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). In a pre-indictment as well as post-indictment context, probable cause to believe that the surgical procedure will yield evidence material to the issue of guilt or punishment, and the extent to which the procedure may threaten the safety or health of the individual, are the critical factors bearing on the reasonableness of the state's intrusions on an individual's bodily integrity. Winston v. Lee, 470 U.S. 753, 760-61, 105 S.Ct. 1611, 1616-17, 84 L.Ed.2d 662 (1985). The magistrate judge properly focused on those factors without regard to the question of whether at some future date, assuming *566 the state reinstitutes prosecution by obtaining a new grand jury indictment, a court may agree with respondent in the "difficult and sensitive balancing process" which underlies such claims, Barker v. Wingo, 407 U.S. 514, 533, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972), that the state's contrived continuance on May 18, 2000 deprived him of his right to a speedy trial barely a month after the trial court determined that respondent had regained his capacity to proceed following a 13-month commitment to the East Feliciana Forensic Facility in Jackson.
Accordingly, the judgment of the Fourth Circuit is reversed, and this case is remanded to the Magistrate Court for Orleans Parish. The magistrate judge is directed to conduct a hearing at which he will reinstate his previous order granting the state's motion to draw a sample of respondent's blood under appropriate conditions to assure that the procedure is conducted by medical personnel in accord with accepted medical practice. The magistrate judge is further directed to order defense counsel to produce the remaining portions of the cushion swatch submitted to its independent expert for testing and to return the evidence to the state.
JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS.
LEMMON, dissents and assigns reasons.
KIMBALL, J., would grant and docket.
LEMMON, J., dissenting.
While I agree with the reasoning of the majority on the issues discussed, I would not reach those issues which presuppose that defendant will be reindicted. In my view, a second indictment is precluded under the circumstances of this case.
When the trial judge refused the prosecutor's motion for a continuance on the day of trial, the prosecutor had two valid choices: (1) to proceed to trial or (2) to seek supervisory review of the denial.[1] Instead, the prosecutor decided to "grant himself a continuance" by dismissing the charges which was not a valid choice, at least if the prosecutor intended to seek a second indictment. I believe the prosecutor's dismissal of the charges (instead of going to trial or seeking supervisory review) precluded any further prosecution. I therefore would not reach the issues decided by the majority.
NOTES
[1] If the defendant had sought and been denied a continuance, his only two choices would have been seeking supervisory review of the denial or going to trial. He could not have flaunted the trial judge's decision or taken over the judge's control of his docket, as the prosecutor did.