| STATE OF LOUISIANA | * | NO. 2024-KA-0092 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| DERRICK L. SMITH | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

**JCL**     **LOBRANO, J., CONCURS WITH REASONS**

I respectfully concur in the majority's decision to reverse the district court's grant of the motion to quash. The record and controlling jurisprudence support the conclusion that Defendant, Derrick Smith, failed to demonstrate either specific prejudice to his defense or a violation of his statutory or constitutional right to a speedy trial. However, I write separately to underscore a point noted by the majority: "[A]n appropriate and effective remedy in a matter wherein the State has arguably flaunted its authority to dismiss and reinstitute charges based on an unpreparedness to go to trial and/or comply with discovery deadlines, would be the institution of contempt proceedings rather than quashing the charges, which would result in a windfall for the defendant." *State v. Smith*, 24-0092 (La. App. 4 Cir. _/_/16), slip op. at 11 n. 6.

This observation is critical. It rightly highlights that when prosecutorial conduct disrupts the orderly administration of justice and subverts judicial authority, the proper remedy lies not in shielding the defendant from prosecution, but in holding the State accountable through contempt or other appropriate action. The issue at stake is not merely procedural fairness, but the preservation of the court's constitutional role as the guardian of due process and the integrity of the adversarial system.

1

While the State holds broad discretion to dismiss and reinstitute charges under La. C.Cr.P. arts. 61, 691, and 576, that discretion is not without limits. As the Louisiana Supreme Court noted in *State v. Love*, 00-3347, p. 14 (La. 5/23/03), 847 So.2d 1198, 1209, this power may not be used to "flaunt[] [the prosecutor's] authority" or undermine the district court's control over its docket. Judicial discretion and dignity remain protected by codal provisions such as La. C.Cr.P. arts. 2 and 17, which empower the court to ensure that proceedings are fair, orderly, and expeditious.

Justice Lemmon warned against exactly this type of prosecutorial action in his dissent in *State v. Stephens*, 00-2472 (La. 3/16/01), 782 So.2d 562 (Lemmon, J., dissenting). There, he noted that when a prosecutor is denied a continuance, his options are to proceed to trial or seek supervisory review, not to unilaterally dismiss and reinstitute charges in order to sidestep the court's authority. To do so, he wrote, "is not a valid choice." *Id.*, 00-2472, p. 1, 782 So.2d at 566. Such conduct amounts to the prosecutor "granting himself a continuance" and displacing the role of the judge.[1] *Id.*

---

[1] In *Love*, 00-3347, 847 So.2d at 1214 (Weimer, J., concurring in part; dissenting in part), Justice Weimer quoted Justice Lemmon's dissent in *Stephens*, 00-2472, 782 So.2d at 566, n. 1:

> If the defendant had sought and been denied a continuance, his only two choices would have been seeking supervisory review of the denial or going to trial. He could not have flaunted the trial judge's decision or taken over the judge's control of his docket, as the prosecutor did.

Continuing, Justice Weimer wrote:

> There is no question the District Attorney has the authority to dismiss indictments. LSA-C.Cr.P. arts. 61 and 691. There is no question the District Attorney has the authority to reinstitute indictments. LSA-C.Cr.P. arts. 61 and 576. Although the District Attorney has the authority to dismiss and reindict, this authority is not without countervailing statutory limitations based on the authority of the trial court. The authority of the District Attorney does not negate the authority of the trial court. LSA-C.Cr.P. art. 17. *See also* LSA-C.Cr.P. art. 2.

> As stated in the *amicus* of the Louisiana Association of Criminal Defense Lawyers, while judges do not control a decision to prosecute, judges do control their dockets in such a way as to

In the case *sub judice*, the record shows that the State declared trial readiness

at the pretrial conference, only to nolle prosequi the charges on the morning of trial

---

ensure "simplicity in procedure, fairness in administration, and . . . elimination of unjustifiable delay" as required by LSA-C.Cr.P. art. 2 as well as "to require that criminal proceedings shall be conducted . . . in an orderly and expeditious manner and to so control the proceedings that justice is done," as required by LSA C.Cr.P. art. 17. Judges set trials. LSA-C.Cr.P. art. 702. Once trials are set, LSA-C.Cr.P. art. 707 *et seq.* governs continuances and applies to both the State and the defendant. Louisiana Code of Criminal Procedure article 691 was never intended to empower a District Attorney who fully intended to prosecute charges to avoid or delay a trial without complying with LSA-C.Cr.P. art. 707 *et seq.* In short, the courts ensure the "due process" guaranteed by the United States and Louisiana Constitutions.

. . . Such a requirement should not be considered a limitation on the authority of the District Attorney, but rather a limitation on a potentially abusive practice. This equilibrium between the statutory authority of the court and the District Attorney was recognized in *State v. Frith*, 194 La. 508, 518, 194 So. 1, 4 (1940).

In *Frith*, this court analyzed the relationship between LSA-C.Cr.P. art. 61 which gives the District Attorney the right to choose who and when to prosecute, and LSA-C. Cr.P. art. 702, which empowers the trial court to set trial dates on motion of the District Attorney or defendant. The court stated:

> If Article 17 [now Article 61] of the Code stood alone, the district attorney would have entire control over the criminal docket and could arbitrarily and without reasonable cause postpone the trial of any case to suit his own whim or pleasure. But that article must be read in connection with Article 314 [now Article 702], which declares that "it shall always be within the discretion of the court, upon the motion either of the district attorney or of the defendant, . . . to assign a special day for the trial of any case."

*State v. Frith*, 194 La. at 518, 194 So. at 4.

*See also State v. Firshing*, 624 So.2d [921,] 923 [(La. App. 4th Cir. 1993)], wherein the court quoted the trial judge:

> [T]his practice of nolle prossing to get the State to grant it's [sic] own continuance has to stop. . . . [I]t's an inequity in the law that maybe should be faced in the light of a broader perspective. . . . [T]his type of activity in the court system is on it's [sic] face, [violative] of due process. . . . [T]he State should [not] occupy the role of a Judge, and . . . [that's] what's happening in these cases now. . . . [T]he State should not be able to give itself, on it's [sic] own motion, it's [sic] continuance.

*Love*, 00-3347, 847 So.2d at 1215-16.

due to an incomplete certified conviction packet, which is an element essential to proving the felon-in-possession charge. The State neither alerted the court to the deficiency nor requested a continuance. Instead, it immediately reinstituted the same charges the very same day, ensuring Defendant's continued incarceration while bypassing judicial oversight.

This pattern of professing readiness, possessing incomplete discovery, failing to disclose expert witnesses, and using dismissal to avoid the risk of an adverse trial outcome raises legitimate concerns about the integrity of the prosecutorial process. While these actions may not satisfy the threshold for quashing the prosecution with prejudice under current law or the facts of this case, they warrant further scrutiny.

In *State v. King*, 10-2638, p. 6 (La. 5/6/11), 60 So.3d 615, 619, and *State v. Reimonenq*, 19-0367, pp. 7-8 (La. 10/22/19), 286 So.3d 412, 417, the Louisiana Supreme Court emphasized the need for balance between prosecutorial discretion and the judiciary's authority to manage its docket. The Court in *Reimonenq* recognized that nolle prosequi-and-reinstitution may, when used strategically, amount to an abuse of power that violates due process and undermines judicial independence. *Id.*, 19-0367, pp. 7-8, 286 So.3d at 417.[2] The conduct in the present case bears troubling similarities.

---

[2] In his concurring opinion in *Reimonenq*, Justice Weimer observed:

> The result reached today confirms that this court will not allow the use of the "*nolle prosequi* and reinstitution" practice for obtaining an unfair tactical advantage in prosecutions.
>
> I write separately because I dissented in the line of cases cited by the majority, *State v. Love*, 00-3347 (La. 5/23/03), 847 So.2d 1198, *State v. Batiste*, 05-1571 (La. 10/17/06), 939 So.2d 1245, and *State v. King*, 10-2638 (La. 5/6/11), 60 So.3d 615, and wish to emphasize that I do not view the position voiced in those dissents as limiting the authority of the district attorney, but rather as curbing a practice not authorized by the Code of Criminal Procedure: the use of "*nolle prosequi* and reinstitution" as a substitute for the codal provisions for securing a continuance and/or for reversing an adverse trial court ruling through appellate review. As the majority correctly notes, the authority of the district attorney under the Code of Criminal Procedure, specifically La.

4

As courts have noted, including in *State v. Frith*, 194 La. 508, 518, 194 So. 1, 4 (1940); *State v. Firshing*, 624 So.2d 921, 923 (La. App. 4th Cir. 1993); and *Love*, 00-3347, 847 So.2d at 1214-16 (Weimer, J., concurring in part; dissenting in part), the ability of a prosecutor to avoid the ordinary continuance process and circumvent court control through unilateral dismissal and reinstitution is not what our system of justice contemplates. The Code of Criminal Procedure must be read as a whole, harmonizing the authority of the prosecutor with the inherent powers of the judiciary under Articles 17 and 707.

Justice Weimer in *Reimonenq*, 19-0367, 286 So.3d at 419 (Weimer, J., concurring), noted that Professor Thorp aptly observed in *Nolle*-and-Reinstitution: Opening the Door to Regulation of Charging Powers, 71 N.Y.U. Ann. Surv. Am. L. 429, 431 (2016), the prosecutor's authority shifts once charges are filed from inquisitorial discretion to adversarial action. At that point, the prosecutor becomes a party within the judicial process and is bound by the same procedural rules and

---

C.Cr.P. arts. 61 and 691, must be balanced and harmonized with the authority and duty of the trial court to conduct criminal proceedings "with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La. C.Cr.P. art. 17; *see also State v. Reimonenq*, 19-0367, slip op. at 7 (La. 10/22/19), 286 So.3d 412, 2019 WL 5445065. This conclusion stems from the nature of a code, which is, by definition, a compilation or collection of laws. As such, it must be interpreted and evaluated by taking into account *all* of its provisions, including, especially, those that touch upon the same subject matter. In this case, while it is clear that La. C.Cr.P. arts. 61 and 691 confer upon the district attorney the authority to dismiss and reinstitute charges, the articles on continuances and the procedure for obtaining them, La. C.Cr.P. art. 707, *et seq.*, and the articles which set forth the inherent power and authority of courts to control their dockets and to insure the fair and impartial administration of justice, La. C.Cr.P. arts. 2 and 17, must also be considered. The district attorney's authority under La. C.Cr.P. art. 61 is but one provision in the Code of Criminal Procedure. We cannot elevate that one provision to the exclusion of all others but must look to the Code as a whole. We must read, and interpret, the law in its entirety.

*Id.*, 19-0367, 286 So.3d at 418-19 (Weimer, J., concurring) (emphasis in original).

ethical restraints as any other litigant. *Id.* Reinstituting charges to evade judicial control or avoid evidentiary shortfalls cannot be condoned.[3]

La. C.Cr.P. art. 17 authorizes courts to take the necessary measures to ensure orderly proceedings and respect for judicial authority.[4] Unilateral actions by the State that effectively nullify court orders or undermine scheduled trials may fall within the ambit of indirect contempt. Accordingly, the prosecutor's conduct raises questions about contempt,[5] professional responsibility,[6] and the proper boundaries

---

[3] Justice Weimer further noted:

> The misuse of the "*nolle prosequi* and reinstitution" practice during the adversarial stage of a proceeding presents two concerns. First, it presents a fundamental fairness and due process issue when a prosecutor chooses to forego available review of a trial court and simply start anew, an avenue that is not available to a defendant. *Nolle*-and-Reinstitution, 71 N.Y.U. Ann. Sur. Am. L. at 441. Second, it presents a separation of powers issue, insofar as the "*nolle*-and-reinstitution" allows a prosecutor to grant him or herself a continuance, which is a "classic judicial power," and to obtain *de facto* control over the court's docket. *Id.* at 447-48.

> Courts should not allow themselves to become the handmaidens of the district attorney when they have the authority and obligation to insure justice is achieved. To this end, this court cannot ignore the encroachment on the authority of the trial court that occurs when the district attorney terminates litigation which the district attorney perceives is not going in his or her favor. Once a matter is set for trial/enters the adversarial stage, the district attorney's authority under La. C.Cr.P. arts. 61 and 691 must be balanced against the court's authority and obligation "to so control the proceedings that justice is done." *See* La. C.Cr.P. art. 17.

*Reimonenq*, 19-0367, 286 So.3d at 419-20 (Weimer, J., concurring) (internal footnotes omitted).

[4] La. C.Cr.P. art. 17 provides:

> A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt.

[5] La. C.Cr.P. art. 20 provides that "[a] contempt of court is an act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority."

[6] *See* Rules 3.2 (failure to make reasonable efforts to expedite litigation), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 3.4(d) (failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party), 3.5(d) (engaging in conduct intended to disrupt a tribunal), 4.4(a) (in representing a client, a lawyer

6

of prosecutorial power. It is essential that the separation of powers and the integrity of judicial processes be upheld and respected.

---

shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.