847 So.2d 1198 (2003)
STATE of Louisiana
v.
Byron C. LOVE.
No. 2000-K-3347.
Supreme Court of Louisiana.
May 23, 2003.
*1201 Richard P. Ieyoub, Attorney General, Eddie J. Jordan, Jr., District Attorney, Valentin M. Solino, Juliet L. Clark, Assistant District Attorneys, Counsel for Applicant.
Charles Gary Wainwright, Counsel for Respondent.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Baton Rouge, Pauline F. Hardin, M. Richard Schroeder, Laurie White, New Orleans, Ellis Paul Adams, *1202 Jr., Martin K. Maley, Baton Rouge, Counsel for Amicus Curiae.
CALOGERO, Chief Justice.
We granted the State's application for certiorari in this criminal case to consider whether the court of appeal correctly found that the defendant's Sixth Amendment right to a speedy trial was violated by the district attorney's decision to respond to the trial court's denial of his motion for continuance by exercising his plenary power to enter a nolle prosequi, then by reinstituting the bill of information when the reason for requesting the continuance had been resolved. The court of appeal found that the trial court should have granted the defendant's motion to quash the bill of information, and thereupon vacated the defendant's conviction and sentence. Finding on the basis of the record as a whole that the defendant's Sixth Amendment right to a speedy trial was not violated by the district attorney's action in this case, we reverse the judgment of the Court of Appeal and reinstate the defendant's conviction and sentence.

Facts
Defendant was arrested by agents of the Alcohol, Tobacco, and Firearms ("ATF") Bureau Safe Home Task Force during an October 1, 1996, patrol at the Magnolia Housing Development in New Orleans. ATF agent Kevin Stamp testified at the pre-trial hearing that he and other members of the task force were patrolling the neighborhood when they noticed a large crowd gathered in a vacant lot across the street from a grocery store located at the intersection of Sixth and LaSalle Streets. When the agents began to disperse the crowd, Agent Stamp observed defendant discard a brown paper bag between a parked pick-up truck and a telephone pole, then rapidly walk away. As he detained the defendant, Agent Stamp asked Agent Janet Brown to retrieve the paper bag. Agent Stamp testified that Agent Brown then got "the only brown paper bag in the area between the parked pick-up truck and the telephone pole and observed it to contain, I believe[,] a clear piece of plastic containing numerous white rock-like objects." According to the testimony of Agent Stamp, Agent Brown also found a match box containing rock cocaine "right at the opened end of the paper bag, which she believed just possibly had fallen out of the bag due to it being so close." During a search incident to the defendant's arrest, Agent Stamp removed currency totaling $258 from the defendant's pockets.
Formal proceedings against the defendant were instituted by the State on December 11, 1996, when it filed a bill of information charging the defendant with possession of cocaine with intent to distribute. After his arrest, the defendant secured his release from jail and remained out on bond. The defendant was originally brought to trial just more than a year later, on January 15, 1998. However, that trial had to be continued when Agent Brown apparently suffered a mild heart attack in the courtroom during voir dire examination of the prospective jurors. The trial was reset for March 11, 1998, at which time the district attorney orally requested a continuance, asserting that "service was attempted on [Agent Brown] at the ATF office, but she was out sick at the present time." The district attorney asked for an opportunity to "be allowed to contact her and determine and get a definite date on which she will be at work so that we can set a definite trial date." The trial judge summarily denied the district attorney's oral motion for continuance.
The district attorney responded by entering a nolle prosequi in open court immediately following the trial judge's denial of his motion for continuance, as allowed by La.Code of Crim. Proc. art. 691, and *1203 stating on the record his intention to recharge the defendant, as allowed by La. Code of Crim. Proc. art. 693. The defendant objected to the district attorney's actions, stating that the district attorney had improperly forced a continuance of the trial date, an option that is not available to defendants. Defense counsel also specifically noted for the record that witnesses for the defense were present in court and prepared to testify both times the case had been set for trial.
The State filed a new bill of information against the defendant on June 26, 1998, some four months after entering the nolle prosequi. When he was arraigned on the new bill on August 19, 1998, the defendant filed a motion to quash the bill, asserting that his Sixth Amendment right to a speedy trial had been violated by the State. At a September 1, 1998, hearing on the motion to quash, the defendant asserted that he had been prejudiced by the district attorney's action because three of the four defense witnesses who had been present the other two times the case was set for trial were no longer available. Those witnesses had allegedly been at the grocery store across the street from the vacant lot where the crowd was gathered when the ATF task force arrived on the night the defendant was arrested. According to defense counsel, the testimony of those witnesses would have directly contradicted Agent Stamp's testimony that the defendant had thrown a paper bag on the ground shortly before his arrest. The only remaining witness was described by defense counsel as "ill-kempt, dressed in a t-shirt and blue jeans and dirty scruffed-up tennis shoes with a criminal record." Noting that he would have been inclined to grant the motion to quash had the defendant lost all four of his witnesses, the trial judge denied the motion to quash and advised defense counsel concerning his remaining witness "to dress him up if you think that is necessary for the jury."
On October 14, 1998, defendant entered a "best interest" plea under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), specifically noting that his decision to enter that plea had been influenced by his inability, despite great effort, to locate the missing witnesses. The defendant then appealed, setting forth the trial court's denial of his motion to quash as his sole assignment of error. After analyzing the factors set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for determining whether a defendant's right to a speedy trial had been violated, in the light of Louisiana jurisprudence on that issue, the court of appeal found that the 21-month delay between the filing of the original bill of information and the denial of the defendant's motion to quash was presumptively prejudicial, and had violated the defendant's right to a speedy trial. Expressing particular concern about the district attorney's actions in this case, the court of appeal vacated the defendant's conviction and sentence, and ordered the defendant released.

District Attorney's Actions
The gravamen of the defendant's claim that his right to a speedy trial was violated in this case is his argument that the district attorney improperly responded to the district court's denial of his motion for continuance, based on Agent Brown's unavailability for trial on March 11, 1998, by entering a nolle prosequi, while immediately stating his intention to reinstitute the charges, and doing so just four months thereafter. In fact, the defendant asserts that the district attorney's action was both unnecessary and improper. The district attorney's action was unnecessary, the defendant claims, because he had offered to stipulate to Agent Brown's testimony, obviating the State's need for the *1204 availability of Agent Brown.[1] The district attorney's action was improper, the defendant asserts, because the district attorney misused his authority by entering a nolle prosequi, and reinstituting charges, powers clearly granted the district attorney by La Code of Civ. Proc. arts. 691 and 693, respectively. Specifically, the defendant asserts that the district attorney was improperly allowed to grant himself a continuance that had been denied by the trial court. The defendant is joined in this assertion by the Louisiana Association of Criminal Defense Lawyers, which filed an amicus curiae brief in this court.[2]
Concerning the necessity of Agent Brown's testimony, we note that a witness's absence is clearly considered a valid reason for delaying trial under the Speedy Trial Clause, as interpreted by Barker, 407 U.S. at 531, 92 S.Ct. 2182. Moreover, we believe that the State had a valid reason for rejecting the defendant's offer to stipulate to Agent Brown's testimony because of his not unreasonable assumption that only the effective live testimony of Agent Brown would have been sufficient to connect the cocaine-filled match box with the rock cocaine in the paper bag. That live testimony would clearly have bolstered the State's case on one of the critical elements of the charge, the defendant's intent to distribute. In fact, the State noted the need for Agent Brown's live testimony "so the jury could judge her credibility; because its her word at that point against five other people ... that is why the State would not stipulate at that time." Thus, the State gave legitimate reasons for rejecting the defendant's offer to stipulate. See Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), which noted the fact that the announcement of a stipulation on an ingredient of a natural sequence otherwise presented by live testimony may cause jurors to "well wonder what they are being kept from knowing." Id. at 189, 117 S.Ct. 644.
Concerning the propriety of the district attorney's action, the defendant asserts that the State's decision to "grant itself a continuance" by entering a nolle prosequi and reserving its right to recharge the defendant after the trial court denied its motion for continuance undermined the authority of the trial judge to run his court. For one thing, the defendant notes that the State failed to file a written motion for continuance at least seven days prior to the commencement of trial, as required by La.Code of Crim. Proc. arts. 707 and 709, then failed to seek review of the trial court's denial of its motion for continuance through the supervisory writ procedure. Instead, the State chose to avail itself of its plenary powers to enter a nolle prosequi, then recharge the defendant. The defendant argues that the State's use of those powers under the circumstances of this case was inappropriate.
We note that the trial judge made two discretionary rulings in this case. First, the trial judge exercised his discretion to deny the State's motion for continuance. Second, the trial exercised his discretion to deny the defendant's motion to quash. The propriety of the trial court's decision to deny the motion for continuance is not before this court in this appeal. However, much of the defendant's arguments are designed primarily to show that the trial judge did not abuse his discretion when he denied the State's motion to continue. We agree with the defendant's arguments *1205 in this regard. The trial court's decision to deny the motion to continue is amply supported by the record, which demonstrates that the district attorney failed to meet the requirements for seeking a continuance set forth in La.Code of Crim. Proc. arts. 707 and 709. The record indicates that the district attorney failed to ascertain prior to the trial date whether his witness would be available. Nevertheless, no one ever challenged the district attorney's assertion that Agent Brown was ill; in fact, her illness was apparent when she had an apparent heart attack during voir dire on the original trial date.
The trial court's second ruling was the denial of the motion to quash filed by the defendant, who based his written motion solely on his claim that his Sixth Amendment right to a speedy trial had been denied by the State's actions. The defendant's assertion that the trial court abused his discretion when he denied his motion to quash because his speedy trial rights had been violated is the only issue before this court in this case. The defendant challenges the district attorney's decision to nolle pros, then reinstitute charges, as part and parcel of his speedy trial claim.
As the defendant notes, this court has previously approved actions similar to the district attorney's actions in this case. Under procedural circumstances strikingly similar to those presented by the instant case, admittedly with three justices dissenting, this court rejected a defendant's claim in State v. Alfred, 337 So.2d 1049 (La.1976) (on rehearing), that the district attorney had misused his powers to enter a nolle prosequi, then reinstitute charges, stating as follows:
The per curiam of the trial judge assigned additional reasons which apparently influenced his action [to grant a motion to quash]. While recognizing the District Attorney's right to nolle prosse, he said that "the district attorney should not be allowed to abridge a defendant's right to a speedy trial by means of constant nolle prosequies and reindictments." However, this reason overlooks the fact that until the defense filed its speedy trial motion on April 3, 1975 and the trial judge first denied a continuance to the State on May 22, 1975, all delays were acknowledged to be for good cause, and a substantial segment of that delay was due to continuances granted by the court for the defendant's benefit and because juries were unavailable. Until that time, the defendant had recorded no objection. In addition, the trial judge recognized the absence of the State witnesses. Under these circumstances the court's refusal to grant more time compelled the District Attorney to avail himself of the authority he undoubtedly possessed to nolle prosse and again present the case to the grand jury for reindictment. It may be that he gained time by this tactic, but a recognition of this fact does not detract from the realization that a prosecution for a double murder was involved, and it was not unreasonable for the prosecutor to avail himself of all legitimate means to gain adequate time to marshal the proof need to properly present its case. That was his responsibility. To do less would not serve the State's interest. His plenary power in this regard is not subject to question, and, under those circumstance, he is entitled to the presumption that he exercised this power for a proper and lawful purpose in keeping with his duty as a public official. La. R.S. 15:432.
In summary, there were a number of reasons for the delay; Time was needed for the defense to file pleadings, to accommodate the trial date to the availability of a jury panel in a crowded *1206 docket, to enable the district attorney to further investigate the case, and to compel the attendance of absent witnesses.
None of these delays were extraordinary or capricious; none were deliberate on the part of the District Attorney, designed to hamper the defense; none were due to negligence on the part of the court, the prosecutor or other charged with the responsibility of providing a speedy trial; all were legitimate and recognized grounds for continuances. In some cases delays are demanded by the nature of the situations presented. No hard and fast time limit can be fixed for all cases; each must be decided on its own facts and circumstances.
Id. at 1056-57 (emphasis added).
Despite the above language in Alfred, the defendant and amicus assert that a different result is appropriate in this case. The defendant sets forth three arguments to support that assertion. First, the defendant observes that this court was severely split in Alfred, and that the dissenters, in language authored by Justice Tate, expressed great concern about the district attorney's actions. The defendant suggests, therefore, that this court should reconsider its position in Alfred and adopt the view of the dissenters in that case. Second, the defendant notes that Alfred involved a first-degree murder prosecution, a more serious offense than the one with which the defendant is charged in this case. The defendant suggests that, because his offense was less egregious, a lesser standard is necessary to support the quashing of his indictment. Third, the defendant suggests that the trial judge in Alfred failed to properly understand the requirements set forth in Barker, and quashed the indictment despite the fact that the delay was not lengthy and the defendant had failed to show that his defense had been compromised. Amicus adds a fourth argument to this list, asserting that La.Code of Crim. Proc. art. 691 was never intended to allow reinstitution of charges if the district attorney has entered a nolle prosequi with the specific intent to avoid a scheduled trial date.
Concerning the defendant's arguments, we acknowledge that this court was split in Alfred and that the charges against the Alfred defendant were more serious than the charges in the instant case. However, we believe that those distinctions do not necessarily demand another result. Rather, we believe that two other significant distinctions between the instant case and Alfred are more important to the determination of the issue before the court here. First, we note that, in Alfred, the trial judge had granted the motion to quash the first degree murder indictment and this court's decision reversed that ruling. Because a trial judge has the right to control his docket, this court's opinion was designed to explain its reasons for reversing the trial court's ruling on a discretionary call. In fact, one of the reasons the court was sharply divided in Alfred was the expression of the dissenters that the trial court had properly held that the defendant has been denied a speedy trial. Id. at 1058.
Conversely, the trial court in this case denied the motion to quash, and the court of appeal reversed that ruling. Thus, this court has been asked to determine whether the court of appeal correctly reversed a discretionary ruling of the trial judge. Because the complementary role of trial courts and appellate courts demands that deference be given to a trial court's discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. In the instant case, our review of the record convinces us that the trial *1207 judge did not abuse his discretion when he denied the defendant's motion to quash.
One reason we believe that the trial court did not abuse his discretion when he denied the motion to quash in this case is the second significant distinction between this case and Alfred. The district attorney's actions in the Alfred case were clearly more egregious than the actions of the district attorney in the instant case. In Alfred, the court noted that the State had been granted a number of pre-trial continuances, and the defendant had asserted his right to a speedy trial during the initial proceedings. Id. at 1051. Thereafter, the trial court had twice denied motions to continue filed by the State, and the State had twice entered a nolle prosequi, followed by the reinstitution of charges. Id. The defendant eventually filed a petition for habeas corpus, then a motion to quash the third indictment; the trial court granted that motion. Id. Justice Tate's dissent noted that "the defendant was denied a speedy trial despite repeated requests therefor," then stated his conviction that the "state cannot evade the constitutional requirement of a speedy trial by nolle prossing the charge each time it is denied a continuance, and then re-indicting." Id. at 1053. As further explained below, the defendant in this case did not make "repeated requests" for a speedy trial. Moreover, the State entered a nolle prosequi only once. Given the fact that a majority of this court in Alfred ruled for the State, finding that the trial court had abused its discretion in granting the motion to quash, despite the fact the district attorney's actions were more egregious than in this case, the trial court's denial of the motion to quash here is entitled to much more deference.
A trial judge has a responsibility to control the district court over which he presides. La.Code of Crim. Proc. art. 17 ["A court ... has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done."] That responsibility frequently includes the exercise of discretion when deciding whether to grant or deny a motion to quash, and the duty to make reasonable rulings that protect the rights of defendants, without placing unnecessary limits on the State's ability to prosecute cases. The defendant asserts in this case that the district attorney's actions frustrated the trial judge's right to run his court because the judge's denial of the State's motion for continuance was made moot when the district attorney entered a nolle prosequi, then immediately announced his intention to recharge the defendant, meaning that the district attorney "trumped" the trial judge's denial of the motion for continuance, and thereby usurped the court's authority to conduct the proceedings in an orderly and expeditious manner. In essence, the defendant asserts that the trial court's decision to deny his motion to quash was inconsistent with his previous decision to deny the State's motion for continuance.
However, the trial court in this case disagreed with the defendant's assertions to that effect. At the hearing on the motion to quash the reinstituted bill of information, the defendant made the same argument before the trial judge, meaning that the trial judge had an opportunity to evaluate the defendant's assertions that the district attorney's actions impermissibly frustrated his denial of the continuance. Nonetheless, the trial judge denied the motion to quash, apparently because he was unimpressed with the defendant's argument that the district attorney's action was unwarranted. The defendant now makes the somewhat illogical argument in this courtand we find it unconvincingthat the best way to protect the *1208 authority of the trial court is to reverse his more recent discretionary ruling denying the motion to quash, in order to preserve his prior discretionary ruling denying the motion for continuance. At this point, it bears mentioning again that the ruling before the court here is the district court's denial of the motion to quash, not its denial of the motion for continuance.
Ultimately, the trial court's two rulings were not inconsistent. The defendant's arguments notwithstanding, the trial court's denial of the State's motion for continuance was not tantamount to a finding that the State was lying about the absence of its witness for valid medical reasons. Rather, the trial court recognized that the district attorney had not bothered to comply with the formal requirements for seeking a continuance. On the other hand, the trial court denied the motion to quash because it found that, while the State wanted to maximize its case by presenting the testimony of Agent Brown, the State did not seek to gain an unfair advantage over the defendant. The trial judge did not perceive that the district attorney's actions sufficiently disrupted his docket to justify granting the motion to quash; that decision falls within the trial court's discretion under La.Code of Crim. Proc. art. 16.
When a trial judge exercises his discretion to deny a motion to quash, he presumably acts appropriately, based on his appreciation of the statutory and procedural rules giving him the right to run his court. When, as in this case, a trial judge denies a motion to quash, that decision should not be reversed in the absence of a clear abuse of the trial court's discretion. Moreover, nothing in the record of this case indicates that the trial court's actions can be attributed to his belief that he was constrained by this court's Alfred decision to deny the motion to quash. In fact, Orleans Parish Criminal Court judges have often in the past decade granted motions to quash in cases like the present one, where the district attorney had nolle prossed, then reinstituted charges. See State v. Carter, XXXX-XXXX (La.App. 4 Cir. 1/29/03), 839 So.2d 390; State v. Larce, XXXX-XXXX (La.App. 4 Cir. 1/23/02), 807 So.2d 1080; State v. Henderson, XXXX-XXXX (La.App. 4 Cir. 12/13/00), 775 So.2d 1138; State v. Gray, 98-0347 (La.App. 4 Cir. 10/21/98), 766 So.2d 550; State v. Pham, 97-K-0459 (La.App. 4 Cir. 3/26/97), 692 So.2d 11; State v. DeRouen, 96-0725 (La. App. 4 Cir. 6/26/96), 678 So.2d 39; State v. Esteen, 95-1079 (La.App. 4 Cir. 4/3/96), 672 So.2d 1098, writ denied, 96-0979 (La.9/27/96), 679 So.2d 1359; State v. Firshing, 624 So.2d 921 (La.App. 4 Cir. 1993), writ denied, 93-2621 (La.2/25/94), 632 So.2d 760; State v. Leban, 611 So.2d 165 (La.App. 4 Cir.1993). These cases indicate that the judges of the Criminal District Court understand that a trial judge has the authority to grant a motion to quash when the circumstances of the individual case warrant such an action.
Moreover, close review of the above cases indicates that the judges of the Fourth Circuit Court of Appeal do not feel constrained by Alfred, as none of the above cases cite to Alfred. In fact, in the two most recent cases from that appellate courtCarter and Larce, the court has reversed trial court judgments granting motions to quash, purely on the basis of the plenary authority to nolle pros and reinstitute charges, given to the district attorney by La.Code of Crim. Proc. arts. 576 and 578. Prior to those two cases, the appellate court sometimes reversed trial court rulings granting motions to quash in cases involving a nolle pros and reinstitution, finding that the trial court abused its discretion in finding that the defendant's right to speedy trial had been violated. See Gray, Pham, and DeRouen. At other times, the court of appeal has affirmed *1209 trial court rulings granting motions to quash in similar circumstances, as in Henderson, Firshing, Esteen, and Leban. This court has been asked to review only two of the above casesFirshing and Esteen. In both cases, this court denied applications to review appellate court judgment affirming trial court judgments granting motions to quash. Id. The upshot of all of these cases is that Louisiana courts understand that determination of motions to quash in which the district attorney entered a nolle pros and later reinstituted charges should be decided on the basis of the facts and circumstances of the individual case.
Thus, neither Alfred nor this decision should be read by Louisiana courts to constrain a trial court's discretion to grant a motion to quash in appropriate circumstances. In situations where it is evident that the district attorney is flaunting his authority for reasons that show that he wants to favor the State at the expense of the defendant, such as putting the defendant at risk of losing witnesses, the trial court should grant a motion to quash and an appellate court can appropriately reverse a ruling denying a motion to quash in such a situation. In this case, we do no not believe any such palpable abuse is evident that would allow the court of appeal to vacate the defendant's conviction on that basis.

Sixth Amendment Right to Speedy Trial
A defendant's right to a speedy trial is a fundamental right imposed on the states by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). See also La. Const. (1974) art. 1, § 16. The underlying purpose of this constitutional right is to protect a defendant's interests in preventing oppressive pretrial incarceration, limiting possible impairment of his defense, and minimizing his anxiety and concern. Barker, 407 U.S. at 515, 92 S.Ct. 2182.
The United State Supreme Court made the following observations concerning a defendant's Sixth Amendment right to a speedy trial in Barker:
The right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial. If, for example, the State moves for a 60-day continuance, granting that continuance is not a violation of the right to speedy trial unless the circumstances of the case are such that further delay would endanger the value the right protects. It is impossible to do more than generalize about when those circumstances exist.... Thus, as we recognized in Beavers v. Haubert, [198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905)], any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case:
"The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights of a defendant. It does not preclude the rights of public justice. 198 U.S., at 87[, 25 S.Ct. 573]....
The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be *1210 guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy."
Id. at 522-23, 92 S.Ct. 2182 (footnote omitted).
In determining whether a defendant's right to speedy trial has been violated, courts are required to assess the following factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant." Barker, 407 U.S. at 530, 92 S.Ct. 2182; State v. Alfred, 337 So.2d 1049, 1054 (1976) [on rehearing]. Under the rules established in Barker, none of the four factors listed above is "either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial." Id. at 533, 92 S.Ct. 2182. Instead, they are "related factors and must be considered together ... in a difficult and sensitive balancing process." Id.

Length of the delay
The first of the Barker factors, the length of the delay, is a threshold requirement for courts reviewing speedy trial claims. United States v. Avalos, 541 F.2d 1100, 1111 (5th Cir., 1976), cert. denied, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). This factor serves as a "triggering mechanism." State v. Willis, 94-0056, p. 4 (La.App. 1 Cir. 3/395), 652 So.2d 586, 588. Unless the delay in a given case is "presumptively prejudicial," further inquiry into the other Barker factors is unnecessary. Id. However, when a court finds that the delay was "presumptively prejudicial," the court must then consider the other three factors. Id.
Under Barker, the peculiar circumstances of the case determine the weight to be ascribed to the length of the delay and the reason for the delay. State v. Reaves, 376 So.2d 136, 138 (La.1979). Something that is acceptable in one case, may not be acceptable in another because the complexity of the case must be considered. Gray v. King, 724 F.2d 1199, 1202 (5th Cir.1984), citing Barker, 407 U.S. at 531, 92 S.Ct. 2182. The manner of proof must also be considered, as must the gravity of the alleged crime. Id.
In the instant case, in the likely reality that the defendant remained subject to his bail obligation during the nearly four months that passed between the dismissal of his original bill of information and the filing of the new bill, the delay in this case was approximately 22 months.[3] Following a lengthy discussion of Louisiana cases on this issue, the court of appeal found that delay was "presumptively prejudicial" for purposes of the Barker test. State v. Love, 99-1842 (La.App. 4 Cir. 11/8/00), 775 So.2d 717.
The charge in the instant case is possession of cocaine with intent to distribute, a non-capital felony, carrying a penalty of imprisonment at hard labor for not less than five years nor more than 30 years. La.Rev.Stat. 40:967(B)(1). Under the provisions of La.Code of Crim. Proc. art. 578(1), the State must bring the defendant to trial within two years from the date of the institution of the prosecution. In this case, when the State accepted the defendant's plea on October 14, 1998, the two-year statutory period for bringing the defendant *1211 to trial had not expired. Moreover, when a timely-instituted criminal procedure has been dismissed, a new prosecution for the same offense may be instituted within time limits established by the pertinent code article or within six months from the date of dismissal, whichever is longer, if the State can show that the dismissal of the original prosecution was not for the purpose of avoiding the time limit established by La.Code of Crim. Proc. art. 578. La.Code of Crim. Proc. art. 576. Thus, the State did not violate any statutory time limits in the instant case.
Nevertheless, analysis of the length of the delay does not stop with a finding that the State did not violate the statutory provisions, because the right to a speedy trial is a fundamental right. As noted by the court of appeal, Louisiana courts have found that shorter time periods than the 22 months at issue in this case have violated a defendant's right to speedy trial.[4]State v. Leban, 611 So.2d 165 (La.App. 4 Cir.1992), writ denied, 619 So.2d 533 (La.1993) (16-month delay), and State v. Firshing, 624 So.2d 921 (La.App. 4th Cir.1993), writ denied, 93-2621 (La.2/25/94), 632 So.2d 760 (17-month delay). Given the fact that the delay in this case was more lengthy than other delays found "presumptively prejudicial," as well as the fact that the right to a speedy trial is a fundamental right, we agree with the finding of the court of appeal that the delay in the instant case was "presumptively prejudicial," although such is not alone dispositive regarding whether a right to speedy trial was violated. Accordingly, we will consider the other three factors of the Barker test.

Reason for the delay
It is the second factor of the Barker test, the reasons for the delay, that is "[t]he flag all litigants seek to capture." United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). The court minutes in the instant case reveal that the first year of delay following the filing of the original bill of information was caused in large part by consideration of pre-trial motions filed by the defense, including one motion to suppress the evidence, and two motions for continuance, both of which were granted. The trial court also ordered another continuance on its own motion because of another on-going trial. The reason for a fourth continuance is not clear from the record.
In fact, the first delay in the case that can be attributed to the State is the delay that occurred when the original trial was continued because Agent Brown suffered an apparent heart attack during voir dire. As we have already noted, the unavailability of a witness is a valid reason for a continuance under the Speedy Trial Clause. Barker, 407 U.S. at 531, 92 S.Ct. 2182. Further, we have in the first section of this opinion rejected the defendant's claim that what occurred herewhen the district attorney elected to nolle pros, then reinstitute charges four months later because of the unavailability of the State's witnesswas an inappropriate reason for delay. Accordingly, the record in this case indicates that the presumptively prejudicial delay in this case was prompted by legitimate reasons.

Defendant's assertion of his right to speedy trial
The third factor to be considered when analyzing a defendant's speedy trial claim is whether the defendant asserted this right to a speedy trial. The Barker balancing test allows a court to weigh the frequency and force of the objections as opposed to attaching significant weight to *1212 a purely pro forma objection. Id., 407 U.S. at 529, 92 S.Ct. 2182. The "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 531-32, 92 S.Ct. 2182.
In the instant case, the defendant never asserted his right to a speedy trial during the thirteen-month delay between the filing of the bill of information on June 26, 1998, and the first trial on January 15, 1998. Given the fact that none of the four continuances of the trial during that period can be attributed to the State, and the fact that two of them were requested by the defendant himself, the defendant obviously cannot complain about those delays. Moreover, both of the later delays that can be attributed to the State were, as we have already held, caused by the unavailability of one of the State's primary witnesses, Agent Brown, a valid reason for those delays. The first time the defendant raised his right to a speedy trial was three months after the State reinstituted the charges against him, on August 19, 1998, when he filed his motion to quash. Given the lack of frequency and force in the defendant's assertion of his speedy trial claim, we find that the objection in this case was more "pro forma" than not, and therefore not entitled to significant weight. See Barker 407 U.S. at 529, 92 S.Ct. 2182.

Prejudice to the defendant
The final factor to be considered when analyzing a defendant's speedy trial claim under Barker is the prejudice to the defendant resulting from the delay. Prejudice to the defendant should be analyzed in light of the following three interests that the right to speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Id. at 532, 92 S.Ct. 2182. In the instant case, the defendant was out on bail from the date of his arrest, so there was no oppressive pretrial incarceration. Nevertheless, "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." Id. at 533, 92 S.Ct. 2182.
The Barker court specifically noted that the "most serious" of the three interests of the defendant that the right to speedy trial is designed to protect is the third interest listed above, "limiting the possibility that the defense will be impaired." Id. at 532, 92 S.Ct. 2182. Moreover, this court has held that "the most persuasive argument to support a claim of prejudice is the fact that the defense has been impaired," which occurs "principally ... by the death or disappearance of its witnesses during the delay." Alfred, 337 So.2d at 1058.
At the trial court's hearing on his motion to quash the bill of information, the defendant asserted that his defense had been impaired by the disappearance of two[5] of his witnesses. The loss of these witnesses was particularly prejudicial, the defendant asserts, because they were his "best" witnesses, and his remaining witness had a previous drug conviction.
However, when cross-examined by the State, the defendant could not describe the efforts he had made to locate the allegedly missing witnesses; rather, he only presented subpoena returns indicating that one of his witnesses had moved to Atlanta, and that domiciliary, rather than personal service, had been made on the other two witnesses. Moreover, concerning the *1213 witnesses who had not been personally served, the defendant had a right under La.Code of Crim. Proc. art. 736(A) to demand that the sheriff either re-serve the subpoenas or determine that the witnesses had, in fact, moved. See State v. Mizell, 341 So.2d 385, 388 (La.1976). Thus, he could have shown that the witnesses were truly unavailable or he could simply have asked for another continuance in order to secure the presence of his witnesses.
Perhaps more importantly, the trial court rejected the defendant's claim of prejudice in this case, noting that the defendant still had a fact witness who would be "judged based on credibility." That witness would apparently have testified in the same manner as the three missing, contrary to the testimony of Agent Stamp, that he did not see the defendant discard a paper bag prior to the arrest. In fact, before entering his "best interest" plea, the defendant himself took the stand in connection with a defense presentation of a note of evidence, and gave his rendition of the events. He described the events of the night he was arrested, but was not asked whether he discarded a paper bag after the ATF task force arrived on the scene. Accordingly, we do not believe that the defendant has shown sufficient prejudice in this case to prove that his right to a speedy trial has been violated or to support the quashing of the bill of information, especially when this factor is considered along with the other three factors of the balancing test set forth in Barker.

DECREE
The decision of the court of appeal vacating the defendant's conviction and sentence is reversed. The conviction and sentence are reinstated.
COURT OF APPEAL DECISION REVERSED CONVICTION AND SENTENCE REINSTATED.
KIMBALL, J., concurs and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
WEIMER, J., concurs in part, dissents in part and assigns reasons.
KIMBALL, Justice, concurring.
I concur in the majority's decision in this case and write separately to emphasize, as the majority correctly points out, that the judgment before this court is the trial court's denial of defendant's motion to quash the reinstituted bill of information and not its denial of the motion for continuance. Thus, based on the posture of the case at bar, I agree with the majority's reversal of the judgment of the court of appeal.
WEIMER, J., concurs in part; dissents in part.
I agree that the defendant's right to a speedy trial was not violated in this matter. I write to address the State's dismissal and reindictment following the denial of a continuance by the trial court.
As noted by the majority, in this matter the State failed to file a written motion for continuance, as required by LSA C.Cr.P. art. 707, then failed to seek review of the trial court's denial of its motion for continuance through the supervisory writ procedure.
As Justice Lemmon stated in his dissent in State v. Stephens, 2000-2472 (La.3/16/01), 782 So.2d 562, 566:
When the trial judge refused the prosecutor's motion for a continuance on the day of trial, the prosecutor had two valid choices: (1) to proceed to trial or (2) to seek supervisory review of the denial. Instead, the prosecutor decided to "grant himself a continuance" by dismissing the charges which was not a *1214 valid choice, at least if the prosecutor intended to seek a second indictment. I believe the prosecutor's dismissal of the charges (instead of going to trial or seeking supervisory review) precluded any further prosecution. [Footnote omitted.]
Justice Lemmon continued:
If the defendant had sought and been denied a continuance, his only two choices would have been seeking supervisory review of the denial or going to trial. He could not have flaunted the trial judge's decision or taken over the judge's control of his docket, as the prosecutor did.
State v. Stephens, 782 So.2d at 566 n. 1.
See also the dissent in State v. Alfred, 337 So.2d 1049,1058, (La.1976) (on reh'g) which was decided by a bare majority of this court. This court has not intervened in this practice by the State, which has become increasingly evident in Orleans Parish over the past decade; see, e.g., State v. Esteen, 95-1079 (La.App. 4th Cir.4/3/96), 672 So.2d 1098, writ denied, 96-0979 (La.9/27/96), 679 So.2d 1359; State v. Firshing, 624 So.2d 921 (La.App. 4th Cir.1993), writ denied, 93-2621 (La.2/25/94), 632 So.2d 760; State v. Leban, 611 So.2d 165 (La.App. 4th Cir.1992), writ denied, 619 So.2d 533 (La.1993). However, misgivings have not abated since Alfred. See, State v. Stephens, 782 So.2d at 566 (Lemmon, J., dissenting) quoted above.
The present record fully illustrates the inequities that may arise from the State's plenary authority over the conduct of a prosecution. The court minutes show that when defense counsel moved to continue trial on grounds that he would be out of the country, he filed his motion, and the trial court ruled on it, on September 29, 1997, a full week before the scheduled trial date of October 6, 1997. See LSA-C.Cr.P. art. 707 (motion for a continuance "shall be filed at least seven days prior to the commencement of trial."). The timeliness of the defense motion spared everyone in the case, including the witnesses on both sides, an unnecessary last-minute postponement of trial.
On the other hand, it clearly appears that the prosecutor began the proceedings on March 11, 1998, unprepared to make any formal motion, let alone a timely one, based on the purported continued unavailability of Agent Brown. What the prosecutor asked of the court at that time, an opportunity to determine whether and when the agent would become available to testify, should have been ascertained before the trial date and not advanced on the day of trial as a reason for a continuance at a time when the defense had summoned its witnesses to court. In that regard, defense counsel reminded the court on September 1, 1998, that respondent's witnesses were not police officers, but lay witnesses, who were "not being paid to be here, unlike the State's witnesses.... They're merely people who were present at the time."
Given the evident lack of due diligence shown by the State, the trial court properly denied the motion for a continuance because it complied with none of the formal requirements set out in LSA-C.Cr.P. arts. 707 and 709. If the defense had been caught in the State's position, its only recourse would have been appellate review with a much less certain result than the State obtained by the simple expedience of dismissing the bill of information.
In this matter, on the day of trial, the State moved for a continuance. When denied, the State elected to nolle prosequi the indictment. There is no evidence of compliance with LSA-C.Cr.P. art. 707. Thereafter, over three months elapsed before the defendant was reindicted.
*1215 In this matter, defendant produced unrefuted evidence that he was prejudiced by this action of the State because he lost three of his four witnesses. When the matter was previously set for trial, but dismissed by the State, all of the defense witnesses were present to testify. The adverse psychological impact on eye witnesses summoned to appear is devastating when the State has unbridled authority to manipulate the proceeding to grant itself a continuance.[1]
There is no question the District Attorney has the authority to dismiss indictments. LSA-C.Cr.P. arts. 61 and 691. There is no question the District Attorney has the authority to reinstitute indictments. LSA-C.Cr.P. arts. 61 and 576. Although the District Attorney has the authority to dismiss and reindict, this authority is not without countervailing statutory limitations based on the authority of the trial court. The authority of the District Attorney does not negate the authority of the trial court. LSA-C.Cr.P. art. 17. See also LSA-C.Cr.P. art. 2.
As stated in the amicus of the Louisiana Association of Criminal Defense Lawyers, while judges do not control a decision to prosecute, judges do control their dockets in such a way as to ensure "simplicity in procedure, fairness in administration, and... elimination of unjustifiable delay" as required by LSA-C.Cr.P. art. 2 as well as "to require that criminal proceedings shall be conducted ... in an orderly and expeditious manner and to so control the proceedings that justice is done," as required by LSA C.Cr.P. art. 17. Judges set trials. LSA-C.Cr.P. art. 702. Once trials are set, LSA-C.Cr.P. art. 707 et seq. governs continuances and applies to both the State and the defendant. Louisiana Code of Criminal Procedure article 691 was never intended to empower a District Attorney who fully intended to prosecute charges to avoid or delay a trial without complying with LSA-C.Cr.P. art. 707 et seq. In short, the courts ensure the "due process" guaranteed by the United States and Louisiana Constitutions.
When the State dismisses charges within seven[2] days of trial and thereafter reinstitutes the charges, the State should have the burden to establish the defendant was not prejudiced. Imposing such a burden on the State would strike an equilibrium between the statutory authority of the District Attorney and the court and ensure the District Attorney has not abused the authority. Such a requirement should not be considered a limitation on the authority of the District Attorney, but rather a limitation on a potentially abusive practice. This equilibrium between the statutory authority of the court and the District Attorney was recognized in State v. Frith, 194 La. 508, 518, 194 So. 1, 4 (1940).
In Frith, this court analyzed the relationship between LSA-C.Cr.P. art. 61 which gives the District Attorney the right to choose who and when to prosecute, and LSA-C.Cr.P. art. 702, which empowers the trial court to set trial dates on motion of the District Attorney or defendant. The court stated:
If Article 17 [now Article 61] of the Code stood alone, the district attorney would have entire control over the criminal docket and could arbitrarily and without reasonable cause postpone the trial of any case to suit his own whim or pleasure. *1216 But that article must be read in connection with Article 314 [now Article 702], which declares that "it shall always be within the discretion of the court, upon the motion either of the district attorney or of the defendant, ... to assign a special day for the trial of any case."
State v. Frith, 194 La. at 518, 194 So. at 4.
See also State v. Firshing, 624 So.2d at 923, wherein the court quoted the trial judge:
[T]his practice of nolle prossing to get the State to grant it's [sic] own continuance has to stop.... [I]t's an inequity in the law that maybe should be faced in the light of a broader perspective.... [T]his type of activity in the court system is on it's [sic] face, [violative] of due process.... [T]he State should [not] occupy the role of a Judge, and ... [that's] what's happening in these cases now.... [T]he State should not be able to give itself, on it's [sic] own motion, it's [sic] continuance.
Because the defendant has established specific, unrebutted prejudice in the form of lost witnesses and the State has not established the dismissal was a mere contrivance to avoid the adverse ruling by the trial court to the State's request for a continuance, I would find that the trial court abused its discretion in failing to grant the defendant's motion to quash.[3]
JOHNSON, J., dissents and assigns reasons.
In this case, the Court of Appeal properly reversed the trial court's denial of defendant's motion to quash the bill of information. We granted this writ application to explore the limits of authority of a district attorney to enter a nolle prosequi as a response to the denial of a continuance by the trial court, and then subsequently file a new bill of information with the same charges.
In this instance, the practice resulted in actual prejudice to the defendant. We cannot condone a system where the district attorney enters a nolle prosequi on the morning when defendant shows up with his witnesses and prepared for trial, and then refiles charges when defendant's witnesses are no longer available.
NOTES
[1] The defendant admits that his offer to stipulate is not reflected in the brief transcript of the January 15, 1998, mistrial.
[2] The Louisiana District Attorneys Association also filed an amicus curiae brief in support of the State's appeal.
[3] Note however that in United States v. Loud Hawk, 474 U.S. 302, 311-12, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), the court held that the period of time between the dismissal of an indictment and the filing of a new indictment for the same charge does not weigh in favor of a defendant's claim that his right to a speedy trial has been violated if he is neither incarcerated nor subject to bail.
[4] These cases also raised the propriety of the district attorney's decision to enter a nolle prosequi, then reinstitute charges, discussed in the next section of this opinion.
[5] When defendant entered his "best interest" plea, he asserted that three of his four witnesses had disappeared.
[1] While no evidence establishes the State attempted to frustrate the presence of the defense witnesses in this matter, the completely unbridled authority to dismiss and reindict could potentially enable the State to appear at trial, access the presence of the defense witnesses, and then dismiss only to reindict hoping the defense witnesses would not be present at a later time.
[2] See LSA-C.Cr.P. art. 707 which provides that a continuance must be filed at least seven days prior to the commencement of trial.
[3] Given this court's prior ruling in State v. Alfred, 337 So.2d 1049 (La.1976), one can only assume the trial court was reluctant to quash the indictment.

To the extent that Alfred is inconsistent with the views expressed, I suggest it should be modified.