983 So.2d 166 (2008)
STATE of Louisiana
v.
Kia STEWART.
No. 2007-KA-0850.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 2008.
Eddie J. Jordan, Jr., District Attorney, Orleans Parish, David S. Pipes, Jr., Assistant District Attorney/Orleans Parish, New Orleans, LA, for Appellant, State of Louisiana.
Katherine Mattes, Clinical Instructor, Criminal Clinic, Nathan Bays, Tulane Law Clinic, New Orleans, LA, and Sara A. Johnson, Schonekas, Winsberg, Evans & McGoey, LLC New Orleans, LA, for Defendant/Appellee, Kia Stewart.
*167 (Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, Jr.)
MAX N. TOBIAS, JR., Judge.
On 22 February 2006, the defendant, Kia Stewart ("Stewart"), was indicted for the second degree murder of Bryant Craig ("Craig"), a violation of La. R.S. 14:30.1. Stewart entered a plea of not guilty at his arraignment on 26 April 2006, during which time his competency became an issue. The trial court ordered a competency hearing, which was held on 26 September 2006; he was found competent to proceed. On the same date, Stewart filed discovery motions. A discovery hearing was conducted on 30 November 2006, at which time the defendant filed motions to suppress, a motion to quash the indictment, and a motion for reduction of bond. Testimony on the motions to suppress and motion to quash was taken. On 26 March 2007, the trial court granted Stewart's motion to quash the indictment. From that ruling, the state appeals.

STATEMENT OF FACT[1]
On 31 July 2005, Jason Alexander ("Alexander") and Craig were on their way to Craig's mother's house to celebrate Craig's birthday. As Craig turned onto North Prieur Street, Stewart walked out into the street, and Craig almost struck him with his vehicle. After Craig parked and exited the vehicle, Stewart approached Craig and yelled at him for almost hitting him. Stewart then pulled out a gun and shot Craig several times. Alexander gave the police officers a statement, including a description of the perpetrator, and later identified Stewart in a photographic lineup as the perpetrator.

ASSIGNMENT OF ERROR NUMBER 1
The state argues that the trial court erred when it granted Stewart's motion to quash the indictment. The trial court granted the motion on the basis that the time delay between Stewart's arrest and arraignment was prejudicial and violated his rights to a speedy trial and due process.[2]
*168 In his motion to quash, Stewart argued that he was entitled to relief based upon violations of his Sixth Amendment right to assistance of counsel and to a speedy trial and his Fifth Amendment right to due process that occurred as a result of his incarceration from the date of his arrest on 8 August 2005 until his arraignment on 26 April 2006.[3]
The Louisiana Code of Criminal Procedure establishes two time periods relevant to the institution and prosecution of a criminal matter. La.C.Cr.P. art. 701 B(1)(b) requires the filing of an indictment or bill of information within 120 days of arrest when the defendant is continued in custody and being held for a felony for which the sentence is death or life imprisonment unless the state can show just cause for the delay. La.C.Cr.P. art. 701 D provides that once a defendant files a motion for speedy trial, the state must commence trial within 120 days if the defendant is charged with a felony and continued in custody, unless the state shows just cause for the delay. Failure to file an indictment or commence trial within these periods results only in the release of the accused without bail or the discharge of the bail obligation. La.C.Cr.P. art. 578 requires that trial commence within two years following the date of the institution of the prosecution for non-capital felony cases. The remedy for violation of this article is quashing the indictment. La. C.Cr.P. art. 581.
We find that Stewart is not entitled to a quashing of the indictment based upon the statutory rights established by the Code of Criminal Procedure. He was arrested in August 2005. The indictment charging him with second degree murder was filed on 22 February 2006. While more than 120 days elapsed from the time of his arrest until the date the indictment was filed, the only relief afforded under article 701 would be release from jail, not quashing the indictment. Additionally, Stewart filed his motion to quash the indictment within the two year period that the state has to prosecute the case. Thus, we find no basis for granting of the motion to quash under La.C.Cr.P. art. 578.
However, in addition to the right to a speedy trial guaranteed by the Criminal Code, a defendant also has a constitutional right to speedy trial. In State v. Johnson, 622 So.2d 845, 848 (La.App. 4 Cir.1993), this court noted:
The Sixth Amendment of the U.S. Constitution also provides a right to a speedy trial. This is a fundamental right which has been imposed on the states by the due process clause of the Fourteenth Amendment. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). Whether this right has been violated is determined by a four-part test: the length of the delay, the reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. at 2192; State v. James, 394 So.2d 1197, 1200 (La.1981). [Boldface added for emphasis.]
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court noted that the length of delay is a triggering mechanism, and the other three *169 factors need not be addressed unless the court finds the length of delay to be presumptively oppressive given the circumstances of the case. See also Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); State v. DeRouen, 96-0725 (La.App. 4 Cir. 6/26/96), 678 So.2d 39.
In State v. Reaves, 376 So.2d 136 (La. 1979), the Court recognized the motion to quash as the procedural mechanism for a defendant to assert a violation of his constitutional right to a speedy trial. Citing Barker, the Court noted that, "[i]n analyzing an allegation of deprivation of the right to a speedy trial, the court will consider the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice which the defendant has suffered". Id. at 138. See also State v. Pham, 97-0459 (La.App. 4 Cir. 3/26/97), 692 So.2d 11.
In State v. Love, 00-3347 (La.5/23/03), 847 So.2d 1198, the Court reviewed a defendant's right to a speedy trial according to the factors set out in Barker. The Court explained as follows:
A defendant's right to a speedy trial is a fundamental right imposed on the states by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). See also La. Const. (1974) art. 1, § 16. The underlying purpose of this constitutional right is to protect a defendant's interests in preventing oppressive pretrial incarceration, limiting possible impairment of his defense, and minimizing his anxiety and concern. Barker, 407 U.S. at 515[, 92 S.Ct. 2182].
Love, 00-3347 at p. 14, 847 So.2d at 1209.
The United States Supreme Court made the following observations concerning a defendant's Sixth Amendment right to a speedy trial in Barker:
Finally, and perhaps most importantly, the right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. [Footnote omitted.] As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial. If, for example, the State moves for a 60-day continuance, granting that continuance is not a violation of the right to speedy trial unless the circumstances of the case are such that further delay would endanger the value the right protects. It is impossible to do more than generalize about when those circumstances exist. . . . Thus, as we recognized in Beavers v. Haubert, [198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905)] supra, any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case: "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights of a defendant. It does not preclude the rights of public justice." 198 U.S. at 87, 25 S.Ct. at 576, 49 L.Ed. at 954.
The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, *170 [footnote omitted.]but it is the only possible remedy.
Barker, 407 U.S. at 522-23, 92 S.Ct. at 2187-2188.
In State v. Leban, 611 So.2d 165 (La. App. 4 Cir.1992), the state appealed the quashing of an arson charge against the defendant. This court found the sixteen-month delay between the filing of the bill of information and the quashing of the charge to be presumptively prejudicial, thereby triggering consideration of the three remaining Barker factors. In State v. Johnson, 622 So.2d 845 (La.App. 4 Cir. 1993), a delay of twenty-two months was found not to be excessive. This court in State v. Brown, 93-0666 (La.App. 4 Cir. 7/27/94), 641 So.2d 687, did not specifically hold that nineteen months was presumptively prejudicial, but we did consider all the Barker factors. We reversed the granting of the motion to quash, finding that the defendant did not show any prejudice resulting from the nineteen-month delay. The Supreme Court in State v. Love, supra, found that a twenty-two-month delay was presumptively prejudicial, but the defendant's right to a speedy trial was not violated.
The case at bar involves a motion to quash that was granted on the basis of a deprivation of a constitutional right to a speedy trial. However, we find no basis for the defendant's arguments, which are speculative at best. We find no statutory deprivation of right under the Louisiana Code of Criminal Procedure. The time limit for prosecuting the case had not expired when the motion to quash was filed. Further, Stewart filed a motion to suppress identification at the same time as the motion to quash. The filing of the motion to suppress suspended the time limit for proceeding to trial. See La.C.Cr.P. article 580.[4] Therefore, Stewart's only possible argument is a constitutional right to a speedy trial. However, after reviewing the facts of the case, his constitutional right to a speedy trial has not been denied.
Stewart was arrested in August 2005. The indictment charging him with second degree murder was filed in February 2006. The lapse in time between the arrest and the filing of the indictment was caused by Hurricane Katrina and its aftermath. This court in State v. Brazile, 06-1611 (La.App. 4 Cir. 5/30/07), 960 So.2d 333, writ denied, 07-1339 (La.1/7/08), 973 So.2d 733, stated that the delays caused by Hurricane Katrina were beyond the control of the state.[5] Stewart initially appeared for *171 arraignment on 7 April 2006, but competency issues were immediately raised. The trial court ordered a competency evaluation and hearing that was initially set for 20 April 2006. On joint motion, the mental competency hearing was reset for 23 May 2006. On 26 April 2006, Stewart was arraigned and pled not guilty. On 23 May 2006, Stewart was not brought to court and the competency hearing was reset for 8 June 2006. He appeared for the competency hearing on 8 June 2006; however, one of the evaluating physicians requested additional testing on the defendant. The trial court then reset the hearing for 7 July 2006. On 20 June 2006, the competency hearing was rescheduled for 19 July 2006. On 19 July 2006, the defendant was not brought to court. The competency hearing was reset for 12 September 2006. Stewart was not brought to court on 12 September 2006, and the competency hearing was rescheduled for 14 September 2006. On September 14, 2006, Stewart was once again not brought to court and the matter was reset for 12 October 2006. Again, Stewart was not brought to court on 12 October 2006 and the competency hearing was reset for 26 October 2006. Finally, on 26 October 2006, the competency hearing was conducted, and Stewart was found competent to proceed. On the same date, he filed discovery motions.
Stewart filed motions to suppress, a motion for speedy trial, a motion to quash the indictment, and a motion for bond reduction on 30 November 2006. He was not brought to court on 11 January 2007 as scheduled, and the discovery hearing was reset for 17 January 2007. The discovery hearing was conducted on 17 January 2007, and continued until 15 and 25 February 15, 2007, at which time the hearing was concluded. Hearings on his motions were held on 13 February 2007 and 26 March 2007, at which time the trial court granted the motion to quash the indictment. The entire amount of time from the date of arrest to the filing of the motion for speedy trial and motion to quash was approximately fifteen months. The amount of time from the date of the filing of the indictment to the date of the filing of the motions was about nine months. We find that the amount of time from the filing of the indictment to the date of the filing of the motions is not presumptively prejudicial. But even assuming for the sake argument that the delay was possibly prejudicial, we analyze the Barker factors as follows, to-wit:
The delays between arrest and the filing of the indictment were a result of Hurricane Katrina and its aftermath, which were entirely beyond the control of the prosecution. Both the prosecution and the defendant have been affected by the losses the court system sustained during and after the hurricane. Additionally, some of the delays were caused by the defendant's competency issues. Once Stewart was found competent to proceed, he filed a motion for speedy trial and a motion to quash at the same time he filed a motion to suppress the identification. As stated above, the filing of the preliminary pleas prevents the prosecution from commencing trial until the court ruled on such preliminary motions.
Stewart claims prejudice because as a result of the time delay and Hurricane Katrina, evidence was lost. In particular, he notes that the audio and videotaped statements of the alleged eyewitness and the photographic lineup were lost in Hurricane Katrina. In addition, he complains that since Hurricane Katrina, the neighborhood where the incident occurred is *172 now vacant, and he is unavailable to locate any potential defense witnesses. However, he does not state that he knows of any witnesses who observed the incident occur. Thus, his argument about potential witnesses is purely speculative. Additionally, the lost evidence does not prejudice Stewart but puts a heavier burden on the state to prove its case. The state will probably have to produce the sole eyewitness at trial to prove its case. The photographic lineup was reconstructed for the motion hearing. Detective Herman Franklin testified that he was able to reconstruct the photographic lineup by using the booking numbers of the persons used in the lineup.
Stewart also attempts to support his argument that the delay affects his ability to find witnesses with the testimony of Darlene Cusanza, the executive director of Crimestoppers. Detective Leflore Young, Sr., testified at the 13 February 2007 hearing that a patrol officer received information identifying Stewart as the perpetrator, and the information corresponded to a Crimestoppers' tip they had received. In response, Stewart subpoenaed Ms. Cusanza, who testified at the hearing on 26 March 2007 that she searched the Crimestoppers records and found no documents evidencing receipt of information concerning Stewart or the victim. Such testimony does not show that Stewart would be able to find additional eyewitnesses who could testify that he did not commit the offense. Ms. Cusanza's testimony is only sufficient to rebut the officer's testimony that a Crimestoppers' tip was received. The defendant has not shown that he has suffered prejudice as a result of the delay. We thus conclude that the trial court erred when it granted the motion to quash the indictment.

CONCLUSION
For the foregoing reasons, the trial court's ruling is reversed and the matter remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] As this matter has not proceeded to trial, the facts are taken from the testimony elicited at the motion hearings.
[2] The trial court stated:

As to the motion [to] quash, Mr. Stewart turned himself in to the custody of the Orleans Parish Sheriff's Office on August 8th, 2005 and he has remained incarcerated until the present day. He was in prison for nearly seven months before the formal charges were brought by the State.
During that time, the defendant was not appointed counsel nor provided with an opportunity to speak with an attorney and over eight months passed before the defendant was arraigned.
During this period of time critical physical evidence was lost, namely the taped statements of the State's sole eyewitness as well as the video of the same witness' photo identification limiting the defendant's ability to conduct a meaningful cross examination of the witness. Also, the neighborhood in which the incident occurred was vacated due to Hurricane Katrina, making it impossible to locate any potential witnesses on behalf of the Defense.
After carefully [sic] consideration of all four factors set forth by the United States Supreme Court in Barber [sic] v. Wingo, the Court finds one that the length of the delay in the prosecution of the defendant's case was presumptively prejudicial and the reason for this delay was by no fault of the defendant. Also, the defendant was under no obligation to positively assert his right to a speedy trial due to the fact that he was unable to speak with an attorney for such a long period of time. Most importantly, Counsel for Defense has asserted specific prejudice caused by this lengthy delay.
For these reasons, Mr. Stewart's ability to defend himself has, in the judgment of this Court, been severely impaired and he has suffered irreversible prejudice. Therefore, it is this Court's contention that Mr. Stewart's constitutional rights to speedy trial and due process of law have been violated and the Court grants the defendant's Motion to Quash the Bill of Information in this matter.
[3] For reasons that will become apparent infra, we pretermit a discussion as to whether or not a motion to quash an indictment can be based upon the deprivation of one's right to a speedy trial on the basis of a time delay between an accused's arrest and arraignment
[4] La.C.Cr.P. art. 580 provides that "[w]hen a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial." Preliminary pleas that suspend the running of the prescriptive period under article 580 include motions to suppress evidence, motions for preliminary hearing, motions for continuance filed by a defendant, and joint motions for continuance. See, State v. Fish, 05-1929 (La.4/17/06), 926 So.2d 493; State v. Parker, 99-1446 (La.App. 4 Cir. 3/22/00), 757 So.2d 893.
[5] The Brazile court stated:

Article 579 provides that the period of limitation set forth in article 578 shall be interrupted if "the defendant cannot be tried because of . . . any . . . cause beyond the control of the state." Under La.C.Cr.P. art. 579(B) "periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists." As noted in State v. Rome, 93-1221, p. 4, 630 So.2d at 1287: "An interruption of prescription occurs when the state is unable, through no fault of its own, to try a defendant within the period specified by statute."
This Court acknowledges that the State was prevented from trying Mr. Brazile on September 19, 2005 and for some time thereafter while the court was not in operation due to Hurricane Katrina.
Brazile, 06-1611 at p. 4, 960 So.2d at 335-336.