TERRI F. LOVE, Judge.
liThe State of Louisiana appeals the trial court’s ruling, which quashed the bill of information charging defendant, Perry S. Bell, Jr. with second degree murder. The trial court quashed the bill of information after determining that the defendant’s right to a speedy trial was violated and the state abused its authority to enter a nolle *757 prosequi for the purpose of granting the district attorney’s office a continuance. We find the trial court did not abuse its discretion and affirm the trial court’s ruling.

STATEMENT OF CASE

On July 30, 2009, Mr. Bell was indicted on one count of second degree murder, a violation of La. R.S. 14:30.1, in Case No. 488-742.[1] On August 13, 2009, Mr. Bell was arraigned and pled not guilty. On August 17, 2009, Mr. Bell appeared for a hearing to determine counsel; and a hearing on motions was set for September 23, 2009.
On September 23, 2009, Mr. Bell appeared for a discovery hearing with privately retained counsel, Davidson Ehle, III, and filed various motions to ^suppress. A motions hearing was set for October 7, 2009. The State continued the motions hearing three times: the originally set date, October 7, 2009; November 18, 2009; and December 17, 2009. The record does not reflect that Mr. Bell objected to any of these three continuances.
On March 5, 2010, a motions hearing was held, and the district court granted Mr. Bell’s motion to suppress identification. On March 23, 2010, this court granted the State’s writ application and reversed the trial court’s ruling. State v. Bell, unpub., 10-0446 (La.App. 4 Cir. 3/23/10).
Although trial was set for May 18, 2010, the State filed a motion to continue; and Mr. Bell filed a supplemental motion to suppress. The district court granted the State’s motion to continue and converted the trial date to a motions hearing. On June 18, 2010, a new motions hearing and trial date was set for September 8, 2010. On September 13, 2010, “court was can-celled;” and the motions hearing and trial were reset for January 5, 2011. (The record does not reflect why this event occurred on September 13, as opposed to September 8, 2011.)
On October 6, 2010, a pretrial conference was held at which defense counsel, Mr. Ehle, appeared without Mr. Bell. The docket master indicates that the matter was “continued on joint motion,” that the trial set for January 5, 2011 was continued and reset for January 18, 2011.
On January 4, 2011, the State filed a motion to continue the trial. On January 5, 2011, defense counsel, Mr. Ehle, appeared without Mr. Bell for a |Hmotions hearing and trial; however, the docket master indicates that “this matter is set in error for this date.”
On January 18, 2011, defense counsel, Mr. Ehle, and Mr. Bell appeared for trial; the defense declared that it was ready for trial. The State orally moved to continue the trial set for this date because it had not yet received a supplemental report on the homicide from the New Orleans Police Department (“NOPD”). At the hearing, the district court indicated that it was willing to grant the State a continuance but only until Tuesday, January 25, 2011. The State objected that it was impractical to try the case on January 25th, and it indicated that it was going to take a writ application. In order to resolve the matter, the district court ruled that the trial would commence the next day, January 19, 2011. In response, the State entered a nolle prosequi, resulting in the dismissal of Case No. 488-742.
On January 19, 2011, before Mr. Bell was released, the State filed a bill of information charging Mr. Bell with one count of manslaughter, a violation of La. R.S. 14:31, in Case No. 503-235. On January 25, *758 2011, Mr. Bell was arraigned and pled not guilty. At his arraignment, Mr. Bell represented to the court that he planned to retain private counsel; the docket master states: “Defendant to retain private counsel.” On February 8, 2011, the docket master indicates that Mr. Bell failed to appear at a hearing to determine counsel and that the case was transferred to another section of criminal district court to follow Case No. 488-742. On March 15, 2011, the State entered a nolle prosequi in the manslaughter case, Case No. 503-235.
| ¿Meanwhile, on January 20, 2011, Mr. Bell was indicted again for second degree murder in Case No. 503-291. On January 28, 2011, after being allotted to another section, Case No. 503-291 was transferred to the same section of criminal district court as the original second degree murder case, Case No. 488-742. On April 27, 2011, Mr. Bell was arraigned and pled not guilty. At his arraignment, Mr. Bell was determined to be indigent, and the district court appointed the Orleans Public Defenders (“OPD”) to represent him. A hearing to determine counsel was set for May 6, 2011. On that date, Mr. Bell appeared with OPD co-counsel, Scott Sherman and Christopher Morel. A discovery hearing was set for June 27, 2011. On that date, Mr. Bell filed pretrial motions; a motions hearing was set for August 12, 2011; and a trial date was set for October 4, 2011. The record does not reflect any defense objection to the setting of the trial date nearly three months later. On August 12, 2011, the State provided Mr. Bell with answers to his motions; and Mr. Bell’s motion to suppress identification was denied.
On September 13, 2011, Mr. Bell filed a motion to quash in which he argued that over the past twenty-six months, the State had abused its authority by (i) entering a nolle prosequi and filing a frivolous bill of information charging him with manslaughter in order to keep him incarcerated until the next grand jury was empanelled; and (ii) choosing to let him remain in jail for three months before arraigning him on the reinstituted original charge of second degree murder. A motions hearing was set for September 20, 2011, but was later reset to | ¡¡September 29, 2011. On that date, the district court granted Mr. Bell’s motion to quash.
At the hearing on the motion to quash, Mr. Bell introduced several exhibits, including proof that he had been imprisoned continuously since the date of his arrest (April 8, 2009), and a letter from his private counsel, Mr. Ehle, dated September 29, 2011, stating that Mr. Bell’s family could no longer afford to retain him when the second degree murder case was dismissed and reinstituted.
On November 18, 2011, the district court filed with this court a per curiam in support of its ruling. The district court stated as follows:
After granting the State a continuance on three separate occasions and allowing the State to convert a trial date to a hearing on motions four days before the scheduled trial, the State requested yet another continuance. The Trial Court, in an effort to see this matter resolved, denied the continuance. It was at this point the State entered a Nolle Prose-qui.
As a result of the continued delays and the incarceration of the defendant, private counsel could no longer be afforded by the defendant. It was at this point the Trial Court determined the defendant was indigent. The Orleans Public Defender’s office was appointed....
After examining the record and the motions regarding the District Attorney’s clear abuse of the Nolle Prosequi procedure, the Trial Court determined that *759 the State had violated the spirit and letter of the law. Nolle Prosequi should not be used by the State to grant itself a continuance whenever the Trial Court denies them one and they deem it to be necessary, as has become the standard practice by the District Attorney’s office in Orleans Parish.
The Trial Court determined that the defendant has been incarcerated in the Orleans Parish Prison for over thirty months, been denied his right to a speedy trial, and his incarceration was prejudicial against him as he had been denied his right to chosen counsel. (Emphasis supplied).
From this ruling, the State appeals.
| STATEMENT OF FACT
Because this appeal pertains to the granting of a motion to quash based upon the denial of the right to a speedy trial, the facts relating to Mr. Bell’s arrest are not pertinent.

STANDARD OF REVIEW

The State avers its only assignment of error is that the district court abused its discretion by granting Mr. Bell’s motion to quash the indictment for second degree murder. “Louisiana courts understand that determination of motions to quash in which the district attorney entered a nolle pros and later reinstituted charges should be decided on the basis of the facts and circumstances of the individual case.” State v. Love, 00-3847, p. 14 (La.5/23/03), 847 So.2d 1198, 1209. “[A]n appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court’s discretion.” Love, 00-3347, pp. 9-10, 847 So.2d at 1206.

DISCUSSION

Both the Louisiana Supreme Court and this court have recognized the State’s authority to enter a nolle prosequi and to reinstitute the same charge. State v. Bias, 06-1153, p. 2 (La.App. 4 Cir. 12/20/06), 947 So.2d 797, 799. Based on the circumstances of a given case, the State’s authority may be overborne by the defendant’s constitutional right to a speedy trial. Id. (citing Love, supra); State v. Gibson, 07-0530, pp. 4-5 (La.App. 4 Cir. 10/24/07), 971 So.2d 389, 392 (noting |7that the defendant’s right to a speedy trial supersedes the State’s authority under La. C.Cr.P. arts. 576 and 578.)
The burden is on the defendant challenging the State’s dismissal and reinstitution of charges to establish a violation of his constitutional right to a fair and a speedy trial. State v. King, 10-2638, pp. 7-8 (La.5/6/11), 60 So.3d 615, 619; State v. Scott, 04-1142, p. 12 (La.App. 4 Cir. 7/27/05), 913 So.2d 843, 851; see also State v. Williams, 11-0946, p. 9 (La.App. 4 Cir. 4/11/12), 89 So.3d 422, 426 (noting that the defendant is required to show prejudice from the State’s actions). Discussing this requirement, this court in State v. Hayes, 10-1538 (La.App. 4th Cir.9/1/11), 75 So.3d 8, writ denied, 11-2144 (La.3/2/12), 83 So.3d 1043, noted:
Because of the severe remedy, a trial court may not quash the formal charges and dismiss them with prejudice when the prosecution’s abusive exercise of its authority simply disrupts a trial court’s conduct of the proceedings or challenges the court’s authority to manage its docket, but does not significantly disadvantage the defense at any forthcoming trial. Thus, a finding of the prosecution’s abusively exercising its authority is necessary but not sufficient to the sustaining of a motion to quash.
The defendant must show that the district attorney’s abusive exercise of its power actually violates the defendant’s constitutional right to a fair trial.... *760 Thus, we conclude, a prosecutor’s evident, flagrant, objectionable, and ill-motivated “flaunting” is not in itself specific prejudice to the defense at a forthcoming trial. In order to sustain a motion to quash, the resulting specific prejudice to his right to a fair trial must be shown by the defendant.
Hayes, 10-1538 at pp. 8-10; 75 So.3d at 14-15.
In this case, the State contends that, in dismissing and reinstituting charges against Mr. Bell, it: (1) acted within its authority, pursuant to La.C.Cr.P. arts. 576[2] Rand 572(A)(2);[3] (2) did not violate Mr. Bell’s due process rights under the United States or Louisiana Constitution; and (8) did not violate the separation of powers doctrine of the Louisiana Constitution. Mr. Bell counters that the district court was well within its discretion when it granted his motion to quash because the State’s dismissal and reinstitution of charges against him violated three constitutional provisions: due process, separation of powers, and speedy trial.
The identical due process and separation of powers arguments that Mr. Bell raises on appeal were rejected by this court in State v. Luther, 11-1003 (La.App. 4 Cir.
\JLuther, 11-1003 at pp. 7-8, 91 So.3d at 563; see also State v. Broim, 11-0947, p. 3, 5/9/12), 91 So.3d 560. In so doing, this court stated: *761 n.4 (La.App. 4 Cir. 3/7/12), 88 So.Sd 662, 664 (noting that “[b]oth the Louisiana Supreme Court and this court have rejected the separation of powers and due process claims”) (citing King, supra; State v. Batiste, 05-1571 (La. 10/17/06), 939 So.2d 1245; State v. Lee, 11-0892 (La.App. 4 Cir. 1/18/12), 80 So.3d 1292; and Hayes, supra). We decline to revisit those issues.
*760 The identical claims asserted here by Mr. Luther were rejected in Hayes. We rejected the defendant’s claim in which he argued reliance upon the holding in Wardius v. Oregon that the Due Process Clause of the Fourteenth Amendment “speak[s] to the balance of forces between the accused and his accuser.” Wardius v. Oregon, 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). See Hayes, 10-1538, p. 3, 75 So.3d at 11-12 (“The prejudice he identifies in his motion is the self-evident inequity of one party’s ability to avoid trial without authorization of the court.”). And we rejected the defendant’s related claim in which he argued that the prosecutor’s perceived displacement of the trial judge as the effective decider of his own motion for a trial postponement or continuance violates the separation of powers. See Hayes, 10-1538, p. 9, 75 So.3d at 15. In other words, neither claim suffices for the requisite showing of “specific prejudice to his right to a fair trial.” Hayes, 10-1538, p. 10, 75 So.3d at 15.
*761 “In situations where it is evident that the district attorney is flaunting his authority for reasons that show that he wants to favor the State at the expense of the defendant ... the trial court should grant a motion to quash.” Id. The United States Supreme Court enumerated the four factors the trial court must consider when ruling on a motion to quash as follows: “[ljength of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.” Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). We address each factor individually.
1. Length of delay
The first Barker factor, the length of the delay, is often referred to as the threshold requirement. Until there has been a “presumptively prejudicial” delay, a speedy trial analysis is not triggered and further inquiry is not necessary. Barker, 407 U.S. at 531, 92 S.Ct. 2182. The length of delay is evaluated relative to the particular circumstances of the case, such as the complexity of the case and the seriousness of the crime. Barker, 407 U.S. at 530-31, 92 S.Ct. 2182. In Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court noted that “[depending on the nature of the charges, |inthe lower courts have generally found postaccusation delay ‘presumptively prejudicial’ at least as it approaches one year.” Id. at 652, n. 1,112 S.Ct. 2686. This finding “simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry.” Id.
Here, Mr. Bell’s case was delayed thirty months. We find this delay presumptively prejudicial, prompting this court to analyze the other three Barker factors. See Love, 00-3347 at p. 17, 847 So.2d at 1211 (finding a delay of twenty-two months to be “presumptively prejudicial”); State v. Leban, 611 So.2d 165, 169, (La.App. 4th Cir.l992)(finding a delay of sixteen months to be “presumptively prejudicial”).
2. Reason for delay
The second Barker factor, the reason for the delay, has been characterized as the most pivotal of the four factors. United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (“The flag all litigants seek to capture is the second factor, the reason for delay.”) Explaining this factor, the Supreme Court in Barker stated:
Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
| ^Barker, 407 U.S. at 531, 92 S.Ct. 2182. The second Barker factor thus focuses on which party is responsible for the delay.
The State in the instant matter contends the reason for the delay was a missing *762 NOPD supplemental report. Additionally, the State claims that it was not solely responsible for the delay. In support of the latter, the State points to the district court’s continuance due to court cancellation on September 13, 2010 and the joint continuance on October 6, 2010. The State also cites the defense’s failure to object to any of the State’s requests for continuance except the State’s final request.
Conversely, Mr. Bell maintains that the delay was the result of the State’s attempts at controlling the district court’s docket by invoking La.C.Cr.P. art. 61.[4] In particular, Mr. Bell avers the State was responsible for all delays in the three cases — the two second degree murder cases, Case Nos. 488-742 and 503-291; and the manslaughter case, Case No. 503-235. Despite the State’s claim that the delay is due to the missing NOPD supplemental report, Mr. Bell is still not in receipt of the report.
The State contends the missing report justifies the delay in Mr. Bell’s case. This court does not agree. In State v. Leban, supra, the defendant was charged with simple arson. After the trial court granted defendant’s motion to quash, the State appealed. The State argued the delay of sixteen months was due to the State’s | ^missing witness. We affirmed the trial court’s ruling. This court noted the sixteen month delay was unjustified because the State “had yet to identify a witness it had known about for several months [leading] to the final delay, that of the State’s entering a nolle prosequi and reinstituting prosecution.” Leban, 611 So.2d at 169.
Similarly, the State in this case was well aware that the NOPD supplemental report was missing. Even more, the State knew where to locate the officer to produce the supplemental report as he worked for the NOPD. Despite the State knowing that the supplemental report was missing, the State did nothing to obtain it. At the time of this opinion, the docket master does not indicate that the State has turned over the supplemental report. In light of these facts, the delay due to the missing report is unjustified and as such should be weighed against the State.
The State also argues that the defense is responsible for some of the delay in Mr. Bell’s case because defense filed pretrial motions that the State was required to oppose. Namely, the defense filed a motion to suppress identification that the district court granted and the State filed a writ application with this court seeking review of that interlocutory ruling. Finding merit to the State’s writ, this court reversed the district court’s ruling on that motion. State v. Bell, unpub., 10-0446 (La. App. 4 Cir. 3/23/10).
Although the State sought writ review of the interlocutory ruling on the motion to suppress, the State is responsible for the majority of the delay. The State moved for six out of the eight continuances in the original case, Case No. 488-742 including October 7, 2009, November 18, 2009, December 17, 2009, May 18,11S2010, January 4, 2011, and January 18, 2011. The two remaining continuances on September 13, 2010 and October 6, 2010 were due to court cancellation and a joint motion by both parties, respectively. After the State nolle prosequied the original case and reinstituted the charge under Case No. 503-291, the State delayed the case further when it failed to arraign him within the requisite thirty days pursuant to La. *763 C.Cr.P. art. 701(C).[5] For these reasons, we find the State bears the lion’s share of the fault for the delay.
3. Assertion of the right to speedy trial
With regards to the third Barker factor, the assertion of the right to speedy trial, the United States Supreme Court stated:
Whether and how a defendant asserts his right is closely related to the other factors.... The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant’s assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that a failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
Barker, 407 U.S. at 531-32, 92 S.Ct. 2182.
Here, Mr. Bell avers he sufficiently asserted his right to a speedy trial. The State contends that Mr. Bell did not assert his right to a speedy trial until he filed his motion to quash. The State also argues that to meet the requirements of Barker |MMr. Bell should have asserted his right to a speedy trial prior to filing his motion to quash. We find the State’s arguments without merit.
In the previously discussed Leban case, the defendant did not assert his right to a speedy trial until he filed a motion to quash. This court reasoned that the defendant did not move for a speedy trial before filing his motion to quash because up- to the final delay the trial was reset to a fairly close calendar date.
Mr. Bell’s case is analogous to Leban in that at the outset of the original case, Case No. 488-742, each trial date was set relatively close in time leading to the final delay wherein the State entered a nolle prosequi Moreover, the transcript from January 18, 2011 makes clear that prior to the January 18, 2011 trial date, the district court notified both parties that the court would not grant any more continuances in Mr. Bell’s matter. Thus, it is reasonable to presume Mr. Bell would expect his case to be resolved or would go to trial on January 18, 2011, and a motion for speedy trial was not necessary.
Addressing the State’s second argument, the docket master does not indicate that Mr. Bell objected to any of the State’s continuances or that a motion for speedy trial was ever filed. The record, however, does reflect Mr. Bell first indicated his desire to be tried promptly on January 18, 2011. Mr. Bell through counsel expressed his desire to be tried in a timely manner noting that he had been in jail for twenty-one months, and he was “prepared and ready to go forward.” When the district court denied the State’s request for its sixth continuance, the State entered a nolle prosequi and later reinstituted the charge against Mr. Bell under Case No. 503-291. Once Mr. Bell was arraigned, some three months after the State re-indicted him, Mr. Bell filed his motion to quash on September 13, 2011 re-asserting his desire and right to a speedy trial. Based on the foregoing, this |1Bcourt finds Mr. Bell has sufficiently asserted his right *764 to a speedy trial to satisfy the third Barker factor.
4. Prejudice Suffered by the Defendant
The fourth Barker factor to consider is whether the defendant’s right to a fair trial was prejudiced by the delay. Although the burden of establishing prejudice is generally on the defendant, the United States Supreme Court in Doggett, supra, modified its analysis of the prejudice factor and “held that no showing of prejudice is required when the delay is great and attributable to the government.” United States v. Shell, 974 F.2d 1035, 1036 (9th Cir.1992).
Noting that “affirmative proof of particularized prejudice is not essential to every speedy trial claim,” the Supreme Court in Doggett pointed out that there are situations when “excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify.” Doggett, 505 U.S. at 655, 112 S.Ct. 2686. The Supreme Court explained that the defendant’s degree of proof in each situation varies inversely with the government’s degree of culpability for the delay. The Supreme Court further explained that when the State demonstrates reasonable diligence in its efforts to bring the defendant to trial, the defendant must show “specific prejudice to his defense,” no matter how great the delay. Doggett, 505 U.S. at 656, 112 S.Ct. 2686.
Here, Mr. Bell has remained incarcerated without trial since his arrest on April 8, 2009. The delay as previously discussed is attributable to the State. The State on its own motion requested six out of the eight continuances in the original case, Case No. 488-742.
The lengthy delay in Mr. Bell’s case and his time incarcerated is only compounded by the State’s attempt to grant itself a continuance by entering a nolle | v,prosequi on January 18, 2011 and charging Mr. Bell with manslaughter through a bill of information the following day. In addition, the State failed to set Mr. Bell for arraignment on the reinstituted case, Case No. 503-291 until April 27, 2011 — well outside the thirty days required pursuant to La. C.Cr.P. art. 701(C).
Mr. Bell admits while he remains in jail awaiting his day in court, he is unable to prepare or assist in his defense, particularly after he and his family exhausted all financial resources to pay for private counsel. Accordingly, this court finds that because the delay was great and in essence resulted in an inordinate amount of “dead time,” a showing of specific prejudice is not necessary. Barker, 407 U.S. at 533, 92 S.Ct. at 2193.
Additionally, the right to a speedy trial is designed to protect the possibility that the defense will be impaired. The longer the defendant goes without trial, the more likely the defense is compromised. A long pretrial delay, for instance, can call into question a witness’ ability to accurately recall events relevant to the case. A witness’ loss of memory then becomes particularly troublesome with regard to credibility concerns. The Supreme Court in Barker, supra, noted, “[l]oss of memory ... is not always reflected in the record because what has been forgotten can rarely be shown.” Barker 407 U.S. at 532, 92 S.Ct. at 2193. The NOPD supplemental report in this case becomes particularly important because the lengthy delay raises questions of the officer’s ability to accurately recall the events relating to Mr. Bell’s case. The accuracy of the report is especially concerning if the officer has yet to generate the report.

*765
CONCLUSION

Taking all the Barker factors into consideration, this court finds the district court was correct in granting Mr. Bell’s motion to quash. The length of the delay in 117this case of thirty months is presumptively prejudicial and is overwhelmingly attributable to the State’s failure to make reasonable efforts to obtain the missing NOPD supplemental report. Mr. Bell also asserted his right to a speedy trial, expressing his desire to be tried promptly. Furthermore, the State’s flaunting of its authority to enter a nolle prosequi to grant itself a continuance when the district court denied the State’s request was done so at Mr. Bell’s expense. As a result, he suffered a prolong restraint on his liberty, exhaustion of his and his family’s financial resources, and zero progress made in Mr. Bell’s case since the State filed the original bill of information against him.

DECREE

We find that the district court did not err in granting Mr. Bell’s motion to quash and affirm.
AFFIRMED.
BELSOME, J., concurs with reasons.
LEDET, J., dissents with reasons.

. As noted elsewhere, Mr. Bell was arrested on April 8, 2009.

. Article 576 provides:
When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with Mr. Bell’s consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.
A new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the State shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578.
La. C.C. Pr. art. 576

. Article 572 sets forth the time limitations for prosecution of noncapital offenses. Under Article 572(A)(1) the State had six years from the date the offense was committed to prosecute or tiy Mr. Bell for second degree murder, "a felony necessarily punishable by imprisonment at hard labor.” La.C.Cr.P. art. 572(A)(1). As the State points out, Mr. Bell’s motion to quash did not allege that the prosecution was instituted outside the statutory time frame set forth in La.C.Cr.P. arts. 571 through 576. This case involves solely a constitutional speedy trial violation claim.

. La.C.Cr.P. art. 61 provides that, "[s]ubject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.”

. Article 701(C) provides:
Upon filing of a bill of information or indictment, the district attorney shall set the matter for arraignment within thirty days unless just cause for a longer delay is shown.